M.K., et al., Plaintiffs,

v.

George TENET, et al., Defendants.

No. CIV.A. 99–0095 (RMU).
Doc. No. 18.

United States District Court,
District of Columbia.

March 23, 2000.

Roy Walter Krieger, Paleos & Krieger, P.C., Washington, DC, for Plaintiffs.

Sylvia T. Kaser, U.S. Dept. of Justice, Civ. Div., Washington, DC, for Defendants.

### MEMORANDUM OPINION

URBINA, District Judge.

**Granting in Part and Denying in Part the Defendants' Motion to Dismiss**

### I. Introduction

Eight employees of the CIA brought an as-yet-uncertified class action against the CIA, CIA Director George Tenet, and thirty unnamed "John and Jane Does" (collectively "the CIA"). The plaintiffs allege that the CIA violated their constitutional rights to "liberty, due process, access to the courts and to receive effective assistance of counsel under the First, Fourth, Fifth and Sixth Amendments" and violated the Privacy Act. (Am.Compl.¶¶ 103, 107, 115–120) The plaintiffs seek monetary damages and declaratory and injunctive relief, as well as attorney fees and litigation costs. This matter comes before the court on the defendants' motion to dismiss various claims on the following grounds: [1] under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted; [2] under Rule 12(b)(1), for lack of subject-matter

jurisdiction; [3] under Rule 12(b)(2), for lack of personal jurisdiction; and [4] under Rule 12(b)(4), for insufficiency of process. For the reasons which follow, the court will grant in part and deny in part the defendants' motion.

## II. Background [1,2]

Eight employees of the CIA brought suit, on behalf of themselves and a class [3] of persons similarly situated, against the CIA, CIA Director George Tenet, and thirty unnamed "John and Jane Does," for violation of their constitutional rights to "liberty, due process, equal protection, access to the courts and to receive effective assistance of counsel under the First, Fourth, Fifth and Sixth Amendments," and for violations of the Privacy Act. (Am. Compl.¶¶ 103, 107)

### A. Plaintiff M.K.

According to the plaintiffs, the CIA reprimanded plaintiff M.K. and denied her benefits for a security lapse which, she claims, was not her fault. M.K. retained attorney Roy W. Krieger, who also represents the plaintiffs in the instant action, to advise and represent her in the matter. The CIA allegedly prevented Mr. Krieger from obtaining documents that he believed he needed to effectively represent M.K. The CIA denied access to the documents

pursuant to an internal policy notice that limits access to CIA facilities by employees' counsel and prohibits CIA employees from disclosing any document containing official information to their lawyers without prior approval from the CIA Office of General Counsel. The prohibition extends to *un* classified information which the CIA otherwise permits its employees to disclose to the public. (Am. Compl. ¶¶ 18–20 & n. 7) The CIA denied Mr. Krieger's requests for access to certain documents,[4] impairing his ability to effectively represent M.K. and thereby injuring M.K.'s ability to protect her legal rights. (Am.Compl.¶¶ 17, 21)

### B. Plaintiffs Conway, Tilden, C.T., Mitford and R.B.

In addition to M.K., Mr. Krieger has previously represented several of the other plaintiffs in matters pertaining to their employment with the CIA. Specifically, Mr. Krieger represented plaintiffs Conway, Tilden, C.T. and Mitford in their claims of employment discrimination. Like M.K., these four plaintiffs complain that the CIA has denied Mr. Krieger access to documents and information that he needed to effectively represent them—either by denying his requests for access (in the case of plaintiffs M.K., Conway[5], C.T.[6]

---

1. By order dated August 4, 1999, the court approved the voluntary dismissal without prejudice of plaintiff Vivian Green's claims. By order dated March 3, 2000, the court approved the voluntary dismissal without prejudice of plaintiff M.D.E.'s claims. The factual allegations which pertain only to the claims of plaintiffs Green and M.D.E. are accordingly excluded from this recitation. The parties' arguments on the instant motion, insofar as they pertain only to these plaintiffs, have not been considered.

2. Because this matter comes before the court on a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the allegations in the complaint are taken as admitted, *see Shear v. National Rifle Ass'n*, 606 F.2d 1251, 1253 (D.C.Cir.1979), and are stated as facts in this opinion.

3. Two purported classes are defined: [1] Class A, which includes all CIA employees, on behalf of whom the plaintiffs are seeking injunctive relief preventing interference with assistance of counsel, and [2] Class B, which includes all CIA employees who have retained security-cleared counsel to advise and/or represent them in matters related to their employment in the last two years, on behalf of whom the plaintiffs are seeking money damages. (Am.Compl.¶¶ 94–96)

4. The requested documents included CIA policies, procedures and regulations, including regulations governing the filing of a complaint with the CIA Inspector General. The CIA denied all these requests. (Am. Compl.¶¶ 17, 21)

5. Ms. Conway and her counsel, Mr. Krieger, requested regulations, policies, procedures

and Mitford [7]) or by preventing the plaintiffs themselves from obtaining the information (in the case of plaintiff Tilden [8]).

In addition to denying Mr. Krieger access to information he needed to effectively represent these plaintiffs, the plaintiffs allege, the CIA impeded them from getting effective legal assistance by other means:

— In late 1997, CIA personnel interviewed plaintiff Conway as part of a counterintelligience investigation with the potential for criminal charges. Ms. Conway requested that she be allowed to have counsel present at the interview, but the CIA refused. Following the interview, the CIA placed a memorandum criticizing Conway in her personnel files, causing her to be denied a promotion. (Am.Compl.¶¶ 22–27)

— Plaintiff R.B. was subject to several polygraph examinations over the course of six years (1991–1996). R.B. failed one or more of these examinations. In response, the CIA revoked R.B.'s security clearances and placed him on administrative leave. Ultimately, R.B. was forced to retire as soon as he became eligible for retirement. Over the course of these six years, the CIA insisted that R.B. not retain a lawyer to represent him in these matters. (Am.Compl.¶¶ 73–79)

— The defendants intercepted and recorded a telephone conversation between Mitford and Mr. Krieger, his attorney. (Am.Compl.¶ 83)

The defendants have moved to dismiss the plaintiffs' claims on the following grounds: [1] under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted; [2] under Rule 12(b)(1), for lack of subject-matter jurisdiction; [3] under Rule 12(b)(2), for lack of personal jurisdiction; and [4] under Rule 12(b)(4), for insufficiency of process.

### III. Legal Standards

A party moving for dismissal under Federal Rule of Civil Procedure 12(b)(6) has the burden of proving that the nonmovant has failed to state a claim upon which relief can be granted. To prevail, the movant must show "beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *accord Chandler v. D.C. Dep't of Corrections,* 145 F.3d 1355, 1360 (D.C.Cir. 1998); *see also Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) ("A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.") For purposes of determining whether a complaint states a cause of action upon which relief can be granted, the averments in the complaint are taken as true, and the plaintiff is given the benefit of any doubts and of all reasonable inferences that can be drawn from the

---

and documents relevant to Conway's appeal of an adverse memorandum placed in her personnel and security files following the CIA's counter-intelligence investigation of her. (Am.Compl.¶ 25)

**6.** The CIA convened a Board of Inquiry to evaluate C.T. The Board determined C.T. to be unqualified for the position she held. (Am.Compl.¶ 67) *In facsimiles sent on December 23, 1998 and January 15, 1999, Mr. Krieger asked the CIA to let him review the Board of Inquiry documents. He received no response. (Am.Compl.¶ 71)

**7.** In May 1998, plaintiff Mitford filed a charge of employment discrimination against the CIA with the EEOC. (Am.Compl.¶ 81) Mr. Krieger requested access to classified documents relevant to that charge. The CIA did not respond. (Am.Compl.¶ 82)

**8.** The CIA refused to allow Ms. Tilden to copy documents from her security file and later denied her access to that file. The CIA also refused to provide Tilden with data regarding its promotion of female non-official cover officers, data she thought relevant to a charge of gender discrimination she had filed against the CIA. (Am.Compl.¶¶ 32–33, 35)

facts alleged. *See Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994); *Gregg v. Barrett,* 771 F.2d 539, 547 (D.C.Cir.1985); *Shear v. National Rifle Ass'n,* 606 F.2d 1251, 1253 (D.C.Cir. 1979). The court is not required, however, to accept inferences unsupported by the facts alleged, nor need it accept legal conclusions that are cast as factual allegations. *See Kowal,* 16 F.3d at 1276; *United States v. BCCI Holdings,* 980 F.Supp. 21, 26 (D.D.C.1997). Bare conclusions of law and sweeping and unwarranted averments of fact will not be deemed admitted. *See Haynesworth v. Miller,* 820 F.2d 1245, 1254 (D.C.Cir.1987).

The legal standards applicable to the other grounds for dismissal asserted shall be explicated to the extent necessary as the court addresses those grounds.

## IV. Analysis

### A. Should the claims against the thirty John/Jane Doe defendants be dismissed for failure to serve process on them?

The complaint lists as defendants thirty anonymous persons: "John & Jane Does, Numbers One Through Thirty (Names and Addresses Unknown or Classified)" ("the Doe defendants"). (Am. Compl. at 1 & ¶ 10) The defendants argue that these persons have not been properly identified or served, and that the claims against them must therefore be dismissed. (Mot. at 51–53) The court construes this portion of defendants' motion as a motion to dismiss for insufficiency of process under Rule 12(b)(4) and Rule 4(m).[9]

Rule 4(c) requires that "[a] summons shall be served together with a copy of the complaint." Fed.R.Civ.P. 4(c). Rule 4(m) provides that:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed. R. Civ.P.4(m); *see, e.g., Claasen v. Brown,* 1996 WL 79490, *2 (D.D.C.1996) (dismissing action for plaintiffs' failure to serve process within the time provided under Rule 4(m)). The plaintiffs have yet to serve process on the Doe defendants, and it has been more than eight months since the filing of their amended complaint, roughly twice the 120 days that the Rule 4(m) permits as a matter of course.

The plaintiffs argue that the claims against the Doe defendants should not be dismissed because "the identity of certain Doe defendants must await discovery," while the identity of others "is not disclosed primarily for security reasons." (Opp. at 44 n. 50) The court reads this as an argument that the plaintiffs have good cause for having failed to serve the thirty Doe defendants within the time limits prescribed by Rule 4(m). *See, e.g., Moore v. Agency for Intern. Development ,* 994 F.2d 874, 877 (D.C.Cir.1993) ("two attempts to serve the defendants who had notice of the suit and were represented by counsel, coupled with the government's long delay in responding to the complaint, constitute

---

**9.** The motion also calls for dismissal under Rule 12(b)(1) for lack of subject-matter jurisdiction resulting from the plaintiffs' failure to serve. (Mot. at 52–53) The defendants, however, have not made clear the nexus between the plaintiffs' failure to serve the Doe defendants and this court's jurisdiction over the subject matter, which the plaintiffs have averred to be based upon federal question jurisdiction.

The motion further calls for dismissal under Rule 12(b)(2) for lack of *personal* jurisdiction resulting from the plaintiffs' failure to serve. (Mot. at 52–53) While proper service is related to *in personam* jurisdiction—in that both are requirements of Due Process—Defendants provide no authority for the proposition that *proper service is a prerequisite to personal jurisdiction.*

good cause to satisfy [former] Rule 4(j)"); *Henderson v. United States*, 517 U.S. 654, 661 & n. 9, 116 S.Ct. 1638, 134 L.Ed.2d 880 (1996) (noting that Rule 4(j) has been renumbered 4(m)).

■ The court recognizes that there may be a legitimate need for secrecy with respect to the identities of some CIA employees, and, if such a need is shown, arrangements could be made for excluding such defendants' true names from any filings. The plaintiffs, however, point to no authority suggesting that secrecy concerns obviate the requirement that the plaintiffs properly serve process on persons whom they would sue. Unless such persons are properly served, they have no ability to defend themselves, and adjudicating claims against them under such circumstances would deny them their due process right to notice and an opportunity to be heard.[10] *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) ("Due process requires that the defendant be given adequate notice of the suit."); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950) ("The fundamental requisite of due process of law is the opportunity to be heard .... This right to be heard has little reality or worth unless one is informed that the matter is pending and can choose

for himself whether to appear or default, acquiesce or contest."); *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C.Cir.1996), *cert. den.*, 519 U.S. 1077, 117 S.Ct. 737, 136 L.Ed.2d 676 (1997).[11]

The plaintiffs shall be given an additional thirty days from the date of the order accompanying this opinion (1) to serve process on the Doe defendants and (2) to file with the court a request to assign pseudonyms those Doe defendants, if any, for whom the plaintiffs believe pseudonyms are necessary, including an explanation why a pseudonym is necessary in each case. The claims against any Doe defendants upon whom proper service is not effected within that time shall be dismissed without prejudice pursuant to Rule 4(m) and Rule 12(b)(4).

**B. Should the complaint be dismissed for indefiniteness?**

The defendants contend that the complaint must be dismissed because it fails to satisfy the requirement of Federal Rule of Civil Procedure 8 that a complaint set forth " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47–48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (quoting Fed.R.Civ.P. 8(a)); *see, e.g., Nicol v. National Sav. &*

10. The plaintiffs argue that "the joining of 'Doe' defendants ... is a common and accepted practice, widely supported by the courts." (Opp. at 44–45) In support of this proposition, the plaintiffs cite four cases. Three of the cases involved "Doe" *plaintiffs* and not defendants. *See Does 1—5 v. Chandler*, 83 F.3d 1150 (9th Cir.1996); *Does 1—60 v. Republic Health Corp.*, 669 F.Supp. 1511 (D.Nev.1987); *John Does 1—100 v. Boyd*, 613 F.Supp. 1514 (D.Minn.1985). The fourth case cited by the plaintiffs affirmed dismissal on other grounds and did not consider the propriety of allowing an action to proceed against pseudonymous defendants who have not been served. *See Vennes v. An Unknown Number of Unidentified Agents*, 26 F.3d 1448 (8th Cir.1994).

11. *Cf. Taylor v. Federal Home Loan Bank Bd.*, 661 F.Supp. 1341. 1350 (N.D.Tex.1986), where a district court dismissed claims

against Doe defendants for lack of personal jurisdiction because "the naming of the fifty Does, none of whom have been served, for the purpose of adding them to the lawsuit, if they are ever discovered, would prejudice them if they do in fact exist, because they would be treated as if they were in the suit from the filing of the complaint." The court emphasized that "Fed.R.Civ.P. 15(c) is the only way that a plaintiff may name additional defendants after a lawsuit has been filed. The Rule makes no provision for the naming of 'Does' and later substitution of a real person's name." *Taylor*, 661 F.Supp. at 1350; *see also Yothers v. Baker*, 1985 WL 6410, *1 n. 1 (D.D.C.1985) (unnamed Doe defendants were not parties to the suit where they had not been identified or served with process and had not appeared).

*Trust Co.*, 250 F.2d 36, 36 (D.C.Cir.1957) (*per curiam*) (affirming dismissal for indefiniteness under Rule 8(a) where the Court could not "discover what claim the complaint is intended to make"), *cert. den.*, 357 U.S. 909, 78 S.Ct. 1155, 2 L.Ed.2d 1159 (1958). The defendants argue that the complaint simply recites facts and cites various constitutional provisions without showing any logical connection between the two, and thereby fails to give notice of the nature of the plaintiffs' claims and the grounds on which they rest. (Mot. at 34–35) The plaintiffs argue that any indefiniteness in the complaint can be remedied by the granting of a motion for a more definite statement. (Opp. at 26–27)

■ Indeed, the defendants may move for a more definite statement of the plaintiffs' claims under Federal Rule of Civil Procedure 12(e),[12] pointing out the specific defects in the complaint and the details desired, as required by that rule. *See, e.g., Saad v. Burns Int'l Sec. Servs., Inc.*, 456 F.Supp. 33, 36 (D.D.C.1978) (ordering plaintiff to file a more definite statement pursuant to Rule 12(e)). Because any inadequacies in the complaint can be remedied by these less drastic means, the court declines to dismiss the complaint for indefiniteness at this juncture.[13]

## C. Subject–Matter Jurisdiction over Count III

■ The defendants contend that Count III must be dismissed because "the com-plaint states no jurisdictional basis for Count III." (Mot. at 18) They argue that the paragraphs which set forth Count III state no basis for jurisdiction other than the All Writs Act, 28 U.S.C. § 1651(a), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. (Mot. at 17–18) The unstated proposition on which the defendants' argument depends is that the specific paragraphs setting forth a count in a complaint must separately and independently state the basis for federal jurisdiction over that count. The defendants provide no authority for this proposition.

In paragraph 110 of the complaint, the first of five paragraphs setting forth Count III, the plaintiffs "reallege each and every paragraph numbered 1 through 99, inclusive, as if fully set forth herein." Paragraphs 1 through 99 include the plaintiffs' jurisdictional averments, which are stated in paragraphs 1 through 12. The defendants have not challenged the validity of the bases for jurisdiction asserted therein, and this court does not *sua sponte* find them wanting.

The defendants appear to have been confused by the plaintiffs' statement in the last of the five paragraphs setting forth Count III, that "[t]his Court has jurisdiction to grant the relief requested under 28 U.S.C. §§ 1651(a), 2201, & 2202 pursuant to its independent jurisdiction of the instant action existing under 28 U.S.C. § 1331." (Am.Compl.¶ 114) 28 U.S.C. § 1331 provides for federal question juris-

---

**12.** Federal Rule of Civil Procedure 12(e) provides:

> If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. The motion shall point out the defects complained of and the details desired. If the motion is granted and the order of the court is not obeyed within 10 days after notice of the order or within such other time as the court may fix, the court may strike the pleading to which the motion was directed or make such order as it deems just.

Fed.R.Civ.P. 12(e).

**13.** *Cf. Bowles v. Wheeler*, 152 F.2d 34, 41 (9th Cir.1945) (noting that the proper remedy for an indefinite complaint is not dismissal but a Rule 12(e) motion for a more definite statement); *accord Sisk v. Texas Parks and Wildlife Dep't*, 644 F.2d 1056, 1059 (5th Cir.1981) (reversing dismissal for failure to state a claim and noting that "[i]f a complaint is ambiguous or does not contain sufficient information to allow a responsive pleading to be framed, the proper remedy is a motion for a more definite statement under Rule 12(e)" rather than dismissal).

diction.[14] The other Code provisions which the plaintiffs cite empower the district court to grant certain types of relief and are not relevant to whether the court has jurisdiction over the claim *vel non*. *See* 28 U.S.C. § 1651(a) ("all writs necessary or appropriate ... agreeable to the usages and principles of law"), §§ 2201–02 (declaratory judgments). The court understands the plaintiffs to be saying that the court has the jurisdiction to entertain Count III under § 1331, and the authority, under §§ 1651(a), 2201 and 2202, to grant the types of relief which they seek.

The court will deny the defendants' motion to dismiss Count III for lack of subject-matter jurisdiction.

### D. The plaintiffs' Privacy Act claims

The plaintiffs seek monetary damages under the Privacy Act for adverse determinations by the CIA which the plaintiffs claim were based on inaccurate agency records. (Am.Compl.¶¶ 116–17, 118) The plaintiffs also allege that the CIA violated the Privacy Act by refusing to amend records pertaining to them. (Am. Compl.¶ 119) The defendants argue that the plaintiffs' Privacy Act claims must be dismissed because the plaintiffs have failed to aver that they have exhausted available administrative remedies. (Mot. at 55–56) For the reasons which follow, the court agrees in part and disagrees in part.

 Exhaustion of administrative remedies is a prerequisite to bringing a civil suit under the Privacy Act to compel amendment of agency records. *See Nagel v. U.S. Dept. of Health, Educ. and Welfare,* 725 F.2d 1438, 1441 (D.C.Cir.1984) (affirming summary judgment for the de-

fendants as to the plaintiff's Privacy Act claim where the plaintiff had failed to exhaust). However,

> exhaustion of administrative remedies is not required where an individual seeks damages pursuant to 5 U.S.C. § 552a(g)(4) [which provides for the recovery of damages from the government for violations of 5 U.S.C. § 552a(g)(1)(C) ]. The asserted failure of an agency to maintain accurate, relevant and timely records states a claim for damages under Section (g)(1)(C) of the [Privacy] Act ... if that failure results in an agency determination that is adverse to the individual.

*Id.* at 1441 n. 2 (internal quotes and brackets omitted); *accord Hubbard v. U.S. E.P.A.,* 809 F.2d 1, 4 (D.C.Cir.1986). The plaintiffs do seek monetary damages for adverse determinations which they say were based on inaccurate records. The amended complaint states that:

> Defendant CIA has willfully and intentionally failed to maintain accurate, timely and complete records pertaining to Plaintiffs .... Said records were used to make adverse determinations about Plaintiffs .... As a direct and proximate result of the complained of conduct ..., Plaintiffs have suffered and continues (*sic* ) to suffer damage ....

(Am.Compl.¶¶ 116–17) To the extent that these claims seek damages for such adverse determinations, the claims will not be dismissed for failure to exhaust. However, insofar as the plaintiffs seek to compel the CIA to amend their records, their claims *will* be dismissed without prejudice for failure to exhaust.[15]

---

14. "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

15. The plaintiffs argue that they have constructively exhausted available administrative remedies, because further pursuit of these remedies would have been futile. (Opp. at 47–48) The plaintiffs argue that they cannot ask the CIA:

> to amend that which the CIA refuses to admit exists. To the extent Plaintiffs have been denied access to CIA records, they cannot now be condemned for failing to request amendment of what they do not have reason to know.

(Opp. at 47) This argument is without merit. It is true that the courts do not require plaintiffs to exhaust administrative remedies when it would be futile to attempt to do so.

■ The defendants further contend that the plaintiffs' Privacy Act claims must be dismissed because the plaintiffs:

> have pled insufficient facts to state a cognizable Privacy Act claim ... Plaintiffs have not identified any specific, purportedly inaccurate information or factual statement contained in Agency records and/or the reason they believe it is inaccurate.

(Mot. at 53) One of the elements of a claim for damages under the Privacy Act is a showing that an agency:

> fail[ed] to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record ....

5 U.S.C. § 552a(g)(1)(C). Federal Rule of Civil Procedure 8(a) requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief ...." The court finds this standard satisfied with respect to the plaintiffs' allegations of the existence of inaccuracies in agency records. The plaintiffs aver in their amended complaint that there are inaccuracies in the security or personnel records of five of the six remaining plaintiffs, and they identify the general subjects of these inaccuracies:

a. The Security and Personal Files of Plaintiff M.K. contain inaccurate information, *inter alia*, concerning her responsibility for loss of Top Secret information contained on the laptop computers sold at auction.

b. The Security and Personnel Files of Plaintiff Conway ... contain inaccurate information, *inter alia*, concerning alleged CI [counter-intelligence] matters and her purported ineligibility for foreign assignment....

e. The Personnel File of Plaintiff C.T. contains, *inter alia*, inaccurate information concerning her technical qualifications and related performance at Entity A.

f. The Security and Personnel Files of Plaintiff R.B. contain inaccurate (classified) CI [counter-intelligence] and polygraph information.

g. The Personnel File of Plaintiff Mitford ... contain[s] inaccurate information concerning his performance at [the CIA] and PNG [*persona non grata*, which is "the customary means by which persons with diplomatic status are expelled from a host country" (Am. Compl. at 25 n. 15) ] from Foreign Location E, including, *inter alia*, the PARs [per-

*See UDC Chairs Chapter, American Ass'n of University Professors v. Board of Trustees of University of District of Columbia,* 56 F.3d 1469, 1475 (D.C.Cir.1995) (noting that the futility exception to the exhaustion doctrine only applies where there is a "certainty of an adverse decision" or further pursuit of administrative remedies would be "clearly useless"); *see, e.g., Marine Mammal Conservancy v. Department of Agriculture,* 134 F.3d 409, 413 (D.D.C.1998) (likelihood that the plaintiff would lose its administrative appeal is not enough to establish futility).

The plaintiffs here, however, have not shown why it would have been futile for them to use the available administrative remedies before filing their Privacy Act claims. The Privacy Act provides for access by any individual to records pertaining to him. *See* 5 U.S.C. § 552a(d)(1) ("Each agency that maintains a system of records shall upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him ... to review the record ....")

If the plaintiffs asked to review records pertaining to them under § 552a(d)(1), and those requests ware improperly denied and the plaintiffs exhausted their administrative remedies for such improper denial, then they could seek judicial review of such denial. Alternately, if the CIA produced the records to which the plaintiffs believe they are entitled, they could request amendment of such records pursuant to 5 U.S.C. § 552a(d)(2). If the CIA improperly refused to amend the records even after the plaintiffs exhausted the administrative remedies, the plaintiffs might *then* do what they prematurely attempt to do here: seek judicial review of such refusal.

formance appraisal reports] and spot reports referenced above.

(Am.Compl.¶ 116) The defendants provide no legal authority for the proposition that a heightened pleading standard applies to Privacy Act claims. Thus the court will not dismiss the plaintiffs' Privacy Act claims for failure to plead with sufficient specificity.

The defendants also contend that the plaintiffs' Privacy Act claims must be dismissed because the complaint indicates that the Privacy Act's two-year statute of limitations has run with respect to some of the plaintiffs. (Mot. at 54–55) The Privacy Act does contain a two-year limitations period. *See* 5 U.S.C. § 552a(g)(5) ("An action to enforce any liability created under this section may be brought ... within two years from the date on which the cause of action arises ...."); *Blazy v. Tenet,* 979 F.Supp. 10, 18 (D.D.C.1997). However, the defendants have failed to apply this law to the facts—they have not told the Court which of the plaintiffs' claims they assert to be time-barred and on what averments in the complaint they base that assertion. Thus the court will not dismiss the plaintiffs' Privacy Act claims on this ground at this juncture.

■ The defendants further argue that the plaintiffs' Privacy Act claims must be dismissed because the "plaintiffs have not established that they have complied with the Act's two-year limitations period ... which is jurisdictional." (Mot. at 54–55) The defendants argue that this is grounds for dismissal under Rule 12(b)(1) for lack of subject-matter jurisdiction. The defendants provide no convincing authority supporting either [1] the proposition that the court's subject-matter jurisdiction with respect to a Privacy Act claim turns on satisfaction of the limitations period,[16] or [2] the proposition that a Privacy Act claimant must affirmatively establish compliance with the Act's limitations period. Accordingly, the court will deny the motion to dismiss the plaintiffs' Privacy Act claims on this ground.

Lastly, the defendants argue that the plaintiffs' Privacy Act claims for damages under 5 U.S.C. § 552a(g)(1)(C) must be dismissed for failure to state a claim, because the amended complaint does not aver facts sufficient to establish required elements of that cause of action. (Mot. at 56–57). Specifically, the defendants contend that the plaintiffs fail: [1] "to identify any adverse determinations that were proximately caused by 'relevant' Agency records intentionally or wilfully maintained

**16.** The *only case* which the defendants cite in support of the proposition that the Privacy Act's limitations period is "jurisdictional" is *Bowyer v. United States Dep't of Air Force,* 875 F.2d 632 (7th Cir.1989). *Bowyer* in turn cites *Diliberti v. United States,* 817 F.2d 1259 (7th Cir.1987), for the proposition that failure to file within the limitations period "deprives the federal courts of subject matter jurisdiction over the action." *Bowyer,* 875 F.2d at 635 (citing *Diliberti,* 817 F.2d at 1262). *Diliberti* held this to be so because the "statutory time limitation ... is unquestionably an integral condition of the sovereign's consent to be sued under the Privacy Act." *Diliberti,* 817 F.2d at 1262.

It is unclear how the proposition that the limitations period limits the Privacy Act's waiver of sovereign immunity establishes the proposition that it also limits the federal courts' subject-matter jurisdiction. (Privacy Act claims are well within the subject-matter jurisdiction of the federal courts over "all civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331.) Therefore, as in the past, this court declines to follow the Seventh Circuit's view that the limitations period is jurisdictional. *See Griffin v. United States Parole Comm'n,* 47 F.Supp.2d 12, 15–16 (D.D.C.1999) (Robertson, J.) As a general matter, statutes of limitations are not jurisdictional prerequisites to suit in district court in this Circuit. *See Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 392, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (*dictum* ) (by implication) ("filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court ...."); *accord Brown v. Marsh,* 777 F.2d 8, 14 (D.C.Cir.1985) (*dictum* ) (by implication); *Williams v. Enterprise Leasing,* 911 F.Supp. 988, 992 (E.D.Va.1995) (*dictum* ). The court sees no basis for treating the Privacy Act limitations period as jurisdictional when other limitations periods generally are not so treated in this Circuit.

in an inaccurate, unfair manner"; and [2] "to identify any facts that ... show ... 'patently egregious and unlawful' conduct ...." (Mot. at 56) The defendants have here roughly stated the required elements of a claim for money damages under the Privacy Act as codified at 5 U.S.C. § 552a(g)(1)(C) and (g)(4). *See Deters v. United States Parole Comm'n*, 85 F.3d 655, 657 (D.C.Cir.1996) (stating elements). Before considering whether the plaintiffs state facts sufficient to satisfy these elements, the court considers the implied proposition on which the defendants' argument depends.

■ The CIA's argument rests on the proposition that the plaintiffs' Privacy Act claims cannot survive the motion to dismiss unless they aver facts establishing each element of a *prima facie* case on these claims. This proposition is *almost* correct. In order to state a claim, and thereby survive a Rule 12(b)(6) motion to dismiss, a complaint must contain either direct *or inferential* allegations sufficient to state all elements of a cause of action.[17]

■ The court finds that the complaint contains sufficient averments from which the court can infer that all the required elements of their Privacy Act claims are alleged. The plaintiffs allege that the defendants "willfully and intentionally failed to maintain accurate timely and complete records pertaining to Plaintiffs ...," that the inaccurate records "were used to make adverse determinations about Plaintiffs, and that" [as a direct and proximate result ..., Plaintiffs have suffered ... damage ....] (Am.Compl.¶¶ 116–17) Accordingly, the court will not dismiss the plaintiffs' Privacy Act claims on this ground.

## E. Does sovereign immunity bar the plaintiffs' Count II claims against the CIA for monetary relief?

In Count II, the plaintiffs allege violations of "*inter alia*, their rights to liberty, due process, equal protection, access to the courts and to receive effective assistance of counsel under the First, Fourth, Fifth and Sixth Amendments, in violation of 5 U.S.C. § 706(1) & (2)(A)-(D)." [18] (Am.

17. *See Johns v. Rozet*, 141 F.R.D. 211, 219 (D.D.C.1992) (Richey, J.) ("A claim will not be dismissed under Rule 12(b)(6) merely because it does not allege with specificity every element of a cause of action, if it contains allegations from which an inference may be drawn that evidence on the essential elements will be produced."); *cf. Whitacre v. Davey*, 890 F.2d 1168, 1170 (D.C.Cir.1989), *cert. den.*, 497 U.S. 1038, 110 S.Ct. 3301, 111 L.Ed.2d 810 (1990) ("if a plaintiff alleges a prima facie case, the complaint may not be dismissed for failure to state a claim.") *with Murray v. D.C.*, 805 F.Supp. 1, 2–3 (D.D.C.1992) ("plaintiffs' complaint fails to allege a prima facie case and can be dismissed for failure to state a claim.") Outside the D.C. Circuit, *see Wolman v. Tose*, 467 F.2d 29, 33 n. 5 (4th Cir.1972) ("Under the liberal rules of federal pleading, a complaint should survive a motion to dismiss if it sets out facts sufficient for the court to *infer* that all the required elements of the cause of action are present."); *Herdrich v. Pegram*, 154 F.3d 362, 369 (7th Cir.1998), *cert. granted e.g.*, —— U.S. ——, 120 S.Ct. 10, 144 L.Ed.2d 841 (1999) ("A complaint must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory .... But such allegations need only state a possi-

ble claim, not a winning claim"); *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir.1995) (" 'the complaint must contain either direct allegations on every material point necessary to sustain a recovery ... or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.' ") (quoting Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 2d § 1216 at 156–59); *Pyles v. United Air Lines, Inc.*, 79 F.3d 1046, 1049 (11th Cir.1996) (plaintiff "failed to state a claim because he has pled nothing which would satisfy the third and fourth elements" of the cause of action asserted).
*But see Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 261 (7th Cir.1998) ("Complaints need not spell out every element of a legal theory; that's the big difference between notice and code pleading."); *Ring v. First Interstate Mortgage, Inc.*, 984 F.2d 924, 927–28 (8th Cir.1993) (reversing dismissal for failure to state a claim where the complaint pled "at least in general terms, the elements of a ... cause of action.")

18. 5 U.S.C. § 706 is not a stricture on agency action; rather, it defines the scope of judicial review of agency action under the Administrative Procedure Act, as follows:

Compl.¶107) The defendants argue that the plaintiffs' claims for monetary damages against the CIA are barred by sovereign immunity. (Mot. at 16–17) For the reasons which follow, the court agrees.

■ "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer,* 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); *accord Galvan v. Federal Prison Indus., Inc.,* 199 F.3d 461, 463–64 (D.C.Cir.1999). The Administrative Procedure Act ("the APA") waives sovereign immunity for suits seeking judicial review of federal administrative agency action. *See* 5 U.S.C. § 702. The waiver of immunity does not apply, however, to suits for money damages. *See id.* (waiving sovereign immunity only for "relief other than money damages"). The plaintiffs do seek monetary relief under "Count II, Violation of the Administrative Procedure Act," wherein they state:

As a direct and proximate result of defendant Tenet's complained of acts and omissions, Plaintiffs have suffered damages in the form of *loss of wages and benefits,* loss of career opportunity, loss of promotion, loss of professional and personal reputation, *substantial out-of-pocket costs* ... and mental suffering producing physical symptoms.

(Am.Compl.¶108) (emphasis added) Not all claims for monetary relief, however, are claims for monetary damages. Specifically, the equitable remedy of specific monetary relief is distinct from money damages for this purpose. *See Bowen v. Massachusetts,* 487 U.S. 879, 893, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988); *National Ass'n of Counties v. Baker,* 842 F.2d 369, 373 (D.C.Cir.1988), *cert. den.,* 488 U.S. 1005, 109 S.Ct. 784, 102 L.Ed.2d 775 (1989); *Anselmo v. King,* 902 F.Supp. 273, 275 (D.D.C.1995). Thus the exclusion of damage claims from the APA's waiver of sovereign immunity does not exclude equitable claims for specific monetary relief. *See Bowen,* 487 U.S. at 891–93, 108 S.Ct. 2722; *Anselmo,* 902 F.Supp. at 275.

■ The plaintiffs contend the monetary relief which they seek is not entirely excluded as "money damages" from the APA waiver of sovereign immunity because they seek the specific equitable remedy of back pay. (Opp. at 11) The Supreme Court did state in *dictum* in *Bowen* that "an equitable action for specific relief may include an order providing for the reinstatement of an employee *with backpay* ...." *Bowen,* 487 U.S. at 893, 108 S.Ct. 2722 (*dictum*) (emphasis added). The D.C. Circuit has since held, however, that the APA does not waive sovereign immunity with respect to claims for back pay, except where a defendant has directly deprived a plaintiff of pay due for work completed. The APA does not waive sovereign immunity where the employee al-

§ 706. Scope of review

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial *de novo* by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706.

leges he was deprived of pay by wrongful firing, demotion, non-hiring or non-promotion. *See Hubbard v. EPA,* 982 F.2d 531, 533 & n. 4 (D.C.Cir.1992) (*en banc*). None of the plaintiffs alleges that he was deprived of back pay for work already completed. The plaintiffs' claims for monetary relief are thus barred by the doctrine of sovereign immunity.

Accordingly, the court will grant the defendants' motion to dismiss the plaintiffs' Count II claims for monetary relief against the CIA.

### F. Does sovereign immunity bar the claims for money damages against CIA Director Tenet in his official capacity?

In a footnote, the defendants argue that sovereign immunity bars the plaintiffs' claims for money damages against Mr. Tenet "in his official capacity" as CIA Director:

> To the extent Counts I, II, or III, alleges claims for money damages against the Director in his official capacity, they must be dismissed. Sovereign immunity bars "suits for money damages against officials in their official capacity, *including constitutional claims,* absent a specific waiver by the government." *Clark v. Library of Congress,* 750 F.2d 89, 103–04 (D.C.Cir.1984).

(Mot. at 17 n. 4) (underlining added [19]) The defendants have stated a legal proposition that *may* be applicable, but they have failed to apply it. The defendants beg the question, to what extent *do* Counts I, II, and III allege claims for money damages against the Director in his *official* capacity (as opposed to in his *individual* capacity, where there is no sovereign immunity bar, *see Clark,* 750 F.2d at 103)? [20] Because the defendants fail to apply the law which

they cite in support of their argument, the court will deny their motion to dismiss the plaintiffs' claims on this score.

### G. The Plaintiffs' Constitutional Claims

### 1. Have plaintiffs stated a claim for violation of the Fifth Amendment Due Process Clause?

The plaintiffs seek injunctive relief from CIA "regulations, policies, procedures, customs and practices ... which have the purpose or effect of depriving the plaintiffs of their right to due process in receiving effective assistance of counsel ...." (Am. Compl.¶ 111(d) (Count III)) The plaintiffs also complain that the *individual* defendants have deprived them of their right to due process under the Fifth Amendment. (Am. Compl. ¶¶ 103, 107 (Counts I and II)) The defendants argue that the plaintiffs have failed to state a claim for violation of their right to Due Process. (Mot. at 35–40)

 The Due Process Clause of the Fifth Amendment provides that "No person shall ... be deprived of life, liberty, or property, without due process of law ...." U.S. Const., Am. V. The Due Process Clause requires procedural due process only where a person is deprived of a protected interest in liberty or property. *See Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 569–70, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Mazaleski v. Treusdell,* 562 F.2d 701, 708 (D.C.Cir.1977). The defendants argue that, on the complaint before the court, the plaintiffs have been deprived of no due process liberty or property interest. (Mot. at 35–37) The defendants argue specifically that there is no property or liberty interest in continued employment with the CIA, in employment

---

**19.** The underlined portion of the internal quotation from *Clark* is misquoted. The cited portion of *Clark* includes the text that defendants quote, minus the underlined portion. *See Clark,* 750 F.2d at 103.

**20.** The plaintiffs state that they "do not seek money damages against defendant Tenet in his official capacity." (Opp. at 11 n. 7) Taking the plaintiffs at their word, the court reads Counts I, II and III to assert monetary relief claims against Director Tenet only in his individual capacity.

of a particular kind, in overseas employment, in employment in a specific location, in security clearance, or in access to sensitive information. (Mot. at 36) In their opposition, the plaintiffs do not argue that they have a liberty or property interest in any of these things.[21] Rather, the plaintiffs argue that: [1] as litigants or potential litigants at the time of the events at issue, they had a Fifth Amendment right to counsel "independent of any liberty or property interest" (Opp. at 27); and [2] they have been deprived of their liberty interest in being free from stigmatizing adverse employment actions by their government employer. (Opp. at 28–31)

### a) Does the Fifth Amendment afford a Due Process right to counsel independent of a protected liberty or property interest?

The plaintiffs argue that as litigants or potential litigants at the time of the events alleged in the complaint, they had a Fifth Amendment due process right to counsel "independent of any liberty or property interest." (Opp. at 27) For the proposition that civil litigants have a right to counsel, the plaintiffs cite *McCuin v. Texas Power & Light Co.*, 714 F.2d 1255 (5th Cir.1983), where the Fifth Circuit states that "the right to counsel in criminal cases is expressly guaranteed by the sixth amendment; the right to counsel in civil cases is no less fundamental and springs from both statutory authority [i.e., 28 U.S.C. § 1654[22]] and from the constitutional right to due process of law." *McCuin*, 714 F.2d at 1262 & n. 24. The Fifth Circuit has elsewhere stated that "there is a constitutional right to retained counsel in civil cases, and ... this right may not be im-

pinged without compelling reasons ...." *Texas Catastrophe Property Ins. Ass'n v. Morales*, 975 F.2d 1178, 1181 (5th Cir. 1992), *cert. den.*, 507 U.S. 1018, 113 S.Ct. 1815, 123 L.Ed.2d 446 (1993). These statements by the Fifth Circuit in *McCuin* and *Texas Catastrophe* do suggest that that Circuit might recognize a general right to counsel in civil cases. In both cases, however, these broad statements were used to establish only the more limited proposition that *a civil litigant has a qualified right to retain the counsel of his chaics.*

On the other hand, at least one circuit has held that a person has *no* general constitutional right to counsel in civil cases, including civil matters before an administrative agency. *See Kentucky W. Va. Gas Co. v. Pennsylvania Pub. Util. Comm'n,* 837 F.2d 600, 618 (3d Cir.), *cert. den.*, 488 U.S. 941, 109 S.Ct. 365, 102 L.Ed.2d 355 (1988).

Even if this court were to follow the Fifth Circuit and recognize a due-process right to counsel in civil cases, the plaintiffs' argument fails. The plaintiffs are incorrect in asserting that the civil right to counsel recognized by the Fifth Circuit is a due process right "independent of any liberty or property interest." "In order to assess whether the government has violated the Fifth Amendment's Due Process Clause, we engage in a 'familiar two-part inquiry': we must determine whether the plaintiffs were deprived of a protected interest, and, if so, whether they received the process they were due." *UDC Chairs Chapter, American Ass'n of University Professors v. Board of Trustees of University of District of Columbia,* 56 F.3d 1469, 1471 (D.C.Cir.1995); *accord Logan v. Zimmerman Brush Co.,* 455 U.S.

---

21. An unopposed motion may be treated as conceded by the nonmoving party. *See* LCvR 7.1(b) (formerly Local R. 108(b)); *Johnson v. Greater Southeast Community Hospital Corp.,* 903 F.Supp. 140, 151 (D.D.C.1995); *accord Ghazali v. Moran,* 46 F.3d 52, 52–53 (9th Cir.) (*per curiam* ) (district court did not abuse discretion in granting unopposed motion to dismiss pursuant to local rule), *cert. den.*, 516

U.S. 838, 116 S.Ct. 119, 133 L.Ed.2d 69 (1995).

22. 28 U.S.C. § 1654 provides:
In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein.

422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982).

In light of these authorities, the court finds no basis in the law of this Circuit for a due process right to counsel in civil cases that is independent of a protected liberty or property interest. Accordingly, the court need not reach the plaintiffs' arguments regarding the proper bounds of such purported right. (Opp. at 33–35 (arguing that the plaintiffs have a due process right to a counsel who has access to classified information))

### b) Have the plaintiffs been deprived of a protected interest, entitling them to procedural due process?

■■■ The plaintiffs argue that the CIA deprived C.T. and R.B. of their liberty interest in being free from stigmatizing adverse employment actions by their government employer. (Opp. at 28–31) Standing alone, dismissal or other alteration in government employment status does not implicate a protected liberty interest. *See Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 575, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *O'Donnell v. Barry*, 148 F.3d 1126, 1139 (D.C.Cir.1998). However, a due process liberty interest *is* implicated where the government negatively alters the employment status of a government employee,[23] *and in so doing* stigmatizes the employee or impugns his reputation so as to either (1) seriously damage his standing and associations in his community or (2) foreclose his freedom to take advantage of other employment opportunities by either (a) automatically excluding him from a definite range of employment opportunities with the government or (b) broadly precluding him from continuing in his chosen career *See Siegert v. Gilley*, 500 U.S. 226, 233, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Codd v. Velger*, 429 U.S. 624, 627, 97 S.Ct. 882, 51 L.Ed.2d 92

(1977) (*per curiam*) (impugning statement must be substantially false); *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 573–74, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Orange v. D.C.*, 59 F.3d 1267, 1274 (D.C.Cir.1995); *Kartseva v. Department of State*, 37 F.3d 1524, 1527–28 (D.C.Cir. 1994); *U.S. Information Agency v. Krc*, 905 F.2d 389, 397 (D.C.Cir.1990); *Lyons v. Barrett*, 851 F.2d 406, 410 (D.C.Cir.1988). The plaintiffs argue that the CIA deprived C.T. and R.B. of this due-process liberty interest. (Opp. at 28–31)

■■■ The complaint alleges facts sufficient to suggest that C.T. may have been deprived of the asserted due process liberty interest. C.T. avers that the CIA summarily discharged her after a Board of Inquiry determined her "to be not qualified for the position she held." (Am. Compl.¶ 67) Taking C.T.'s allegation as true, the court finds C.T. has stated a claim that her discharge stigmatized her or impugned her reputation so as to either (1) seriously damage her standing and associations in her community, or (2) foreclose her freedom to take advantage of other employment opportunities by either (a) automatically excluding her from government employment opportunities, or (b) broadly precluding her from continuing in her chosen career. The court will deny the defendants' motion to dismiss C.T.'s due-process claims on this ground.

■■■ Similarly, the complaint alleges facts sufficient to suggest that R.B. may have been deprived of the asserted due process liberty interest, R.B. avers that the CIA forced him to retire as soon as he became eligible to do so. (Am.Compl.¶ 77) On the record before the court so far, there is a genuine question as to whether the forced retirement stigmatized R.B. or impugned his reputation within the meaning of *Roth*, 408 U.S. at 573–74, 92 S.Ct. 2701. The court will deny the defendants'

---

**23.** This also applies to those employed by a government contractor. *See Kartseva v. Department of State*, 37 F.3d 1524, 1527–28 (D.C.Cir.1994) (by implication). The court notes this because it appears that plaintiff C.T. may have been employed by "Entity A," not directly employed by the CIA. (Am. Compl. ¶ 61 & n. 13)

motion to dismiss R.B.'s due-process claims.

The plaintiffs make no argument that any other plaintiffs have suffered a deprivation of an interest in life, liberty, or property which entitled them to due process. The court thus treats the defendants' argument that none of the plaintiffs have been deprived of such an interest (Mot. at 35–37) as conceded with respect to all plaintiffs other than C.T. and R.B.[24] The due process claims of these other four plaintiffs will be dismissed.

### c) Is there a process that was due which C.T. and R.B. were denied?

Having disposed of all of the plaintiffs' due process claims save those of C.T. and R.B., the court continues to analyze only the due process claims of C.T. and R.B.

█ If the government deprives a person of a recognized interest in life, liberty, or property, that person's right to due process is violated if they are not given that process which is due. *See UDC Chairs Chapter, American Ass'n of University Professors v. Board of Trustees of University of District of Columbia,* 56 F.3d 1469, 1471–72 (D.C.Cir.1995). The defendants argue that the plaintiffs have failed to state a claim under the Due Process Clause because, on the facts averred, there is no process that was due the plaintiffs which the government denied them. (Mot. at 37–39)

█ A government employee whose liberty interest in not being stigmatized in the course of a negative change in employment status is entitled to a hearing at which he is given an opportunity to refute the charges and clear his name. *See Codd v. Velger,* 429 U.S. 624, 627, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977) (*per curiam*); *Lyons v. Barrett,* 851 F.2d 406, 410 (D.C.Cir.

1988). Such a hearing, whatever its outcome, does not affect the government's personnel decision, but rather permits the employee to clear his name. *See Lyons,* 851 F.2d at 411. The employee must be given notice of the hearing and of the charges against him. *See Doe v. U.S. Dept. of Justice,* 753 F.2d 1092, 1112 (D.C.Cir.1985).

Neither party's submissions states or implies that C.T. or R.B. were provided a name-clearing hearing. Thus, inferring that the plaintiffs did not receive such hearings, the court cannot say that the complaint fails to state a due process claim with respect to either of these plaintiffs by failing to aver the absence of due process. The court will not dismiss the due process claims of C.T. and R.B. on this ground.

### 2. Have the plaintiffs stated a First Amendment claim?

The plaintiffs also complain that the CIA has violated their First Amendment right of access to the courts. (Am.Compl.¶¶ 103, 107) The defendants argue that the plaintiffs state no such First Amendment claim upon which relief can be granted. (Mot. at 41) The plaintiffs argue that they have a right to meaningful access to the courts under the First Amendment and that inherent in this right is the right "to receive effective assistance of counsel in civil litigation ...." (Opp. at 36) The plaintiffs further contend that this right includes "the threshold right to *ascertain* their legal rights through effective assistance of counsel" regardless of "[w]hether they ever choose to pursue a claim in court ...." (Opp. at 35–37). The plaintiffs argue that essential to their First Amendment right to meaningful access "is the necessity that counsel be 'fully informed' by the client so as to enable the rendering

---

**24.** An unopposed motion may be treated as conceded by the nonmoving party. *See* LCvR 7.1(b) (formerly Local R. 108(b)); *Johnson v. Greater Southeast Community Hospital Corp.* 903 F.Supp. 140, 151 (D.D.C.1995); *accord Ghazali v. Moran,* 46 F.3d 52, 52–53 (9th Cir.1995) (*per curiam*) (district court did not abuse discretion in granting unopposed motion to dismiss pursuant to local rule), *cert. den.,* 516 U.S. 838, 116 S.Ct. 119, 133 L.Ed.2d 69 (1995).

of effective assistance." (Opp. at 37) By implication, the plaintiffs suggest that if a state actor improperly prevents a person from fully informing his attorney of the information needed to render effective assistance, that person's First Amendment right of access to the courts has been violated. The plaintiffs argue that the CIA violated their First Amendment right of access by preventing them from disclosing to their attorney documents "available to Plaintiffs, classified or not" which contained information necessary to the effective assistance of counsel. (Opp. at 37–38)

The plaintiffs base their argument on *Martin v. Lauer*, 686 F.2d 24 (D.C.Cir. 1982). *Martin* involved a First Amendment free-speech challenge to an agency's policy requiring employees who were pursuing legal action against the agency to report to its Administrator about all information they provided to their counsel. The sole issue considered on appeal was "whether the district court properly held that [the employees] could be required, under threat of dismissal, to disclose to the agency information they have provided counsel" that the agency would not have been required to disclose under the Freedom of Information Act. *Martin*, 686 F.2d at 31. The D.C. Circuit held that the district court had erred and that the agency policy violated the employees' First Amendment right to freedom of speech. The court applied a balancing test, holding that the government employees' free speech rights with respect to matters involving their public responsibilities outweighed the government's interest in nondisclosure. The court considered the employees' speech interests to be particularly weighty because the speech in question was the employees' speech to their attorneys. *See Martin*, 686 F.2d at

31–32. Thus, in *Martin*, the employees' free-speech interests were "interwoven with their right to effective assistance of counsel." Therefore, the agency's attempt to restrict the employees' communication with their counsel implicated their "fundamental right of access to the courts." [25] *Id.* at 32–33.

The plaintiffs in the case at bar contend that, under *Martin*, it is unconstitutional for the CIA to "physically withhold from counsel documents available to Plaintiffs the contents of which they may fully describe because [the plaintiffs'] security clearance requirements are met" with respect to the documents. (Opp. at 38) *Martin* is inapposite, however, because the plaintiffs do not assert that they have a *free speech* right under the First Amendment to give their attorney documents to which they have access by virtue of their employment and associated security clearance. Even if the plaintiffs did assert such a right, they would find little support in *Martin*. The D.C. Circuit explicitly noted that its order did not preclude the agency from disciplining employees "for failing to reveal a document read verbatim to their attorneys since such a communication is equivalent to appellants' showing the document to their attorneys." *Id.* at 35 n. 45.

It is difficult, reading the complaint, to determine which allegations correspond to which counts. Specifically, the plaintiffs have complained of violations of their asserted right to effective assistance of counsel under the First, Fifth, and Sixth Amendments,[26] but they fail to specify which of the alleged interferences with the effective assistance of counsel are supposed to violate their First Amendment

---

25. Significantly, the court in *Martin* did *not* hold that the defendant agency had violated any right of access to the courts or to the effective assistance of counsel.

26. The plaintiffs' opposition to the motion makes clear that they are asserting a right to effective assistance of counsel under both the

Due Process Clause of the Fifth Amendment (Opp. at 27–28, 31–35) and the First Amendment right to access to the courts (Opp. at 35–38). The plaintiffs have asked that their Sixth Amendment claims be voluntarily dismissed. (Opp. at 38) The court will grant this request.

right of meaningful access to the courts.[27] The defendants have argued that none of the alleged interferences violate that right of access. (Mot. at 41) It is incumbent upon the plaintiffs, in responding to the defendants' motion, to tell the court which factual allegations form the basis of its First Amendment right-to-access claim. The plaintiffs here have not done so. Instead, the plaintiffs leave it to the court to apply the propositions of First Amendment law which they advance, some of which are apparently novel, to the numerous facts averred in the complaint. The court will use the plaintiffs' opposition to the instant motion as its guide to determine which alleged interferences with effective assistance of counsel go with which claimed constitutional violation. The only factual averments which the plaintiffs have connected to their First Amendment rights are those involving the defendants' interference with the plaintiffs' disclosure of government documents to their attorneys. The court has found that these averments do not state a claim under the First Amendment right of access to the courts. Accordingly, the court finds that the plaintiffs state no First Amendment claim of denial of access to the courts upon which relief can be granted. The court will grant the defendants' motion to dismiss the First Amendment claims, but without prejudice.

### 3. Have the plaintiffs stated an Equal Protection claim?

The defendants argue that the plaintiffs' Equal Protection claims must be dismissed under Rule 12(b)(6) for failure to state a claim. (Mot. at 45–46) The plaintiffs contend that they have stated a claim under the Equal Protection Clause—that, pursuant to an internal policy notice ("the Notice"), the CIA prevents employees who retain counsel to assist them in matters related to their employment to disclose to counsel "documents which they may *otherwise* disclose to anyone else." (Opp. at 38–39) This, the plaintiffs contend, constitutes "a prohibition not applicable to others" within the meaning of the Equal Protection Clause. (Opp. at 39)

The Equal Protection Clause provides that "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. The Due Process Clause of the Fifth Amendment is read to place the same limits on the exercise of federal power that the Equal Protection Clause of the Fourteenth Amendment places on the exercise of state power. *See Weinberger v. Wiesenfeld,* 420 U.S. 636, 638 n. 2, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975); *Cook v. Babbitt,* 819 F.Supp. 1, 11 (D.D.C.1993); *Pedersen v. Burton,* 400 F.Supp. 960, 962 n. 19 (D.D.C.1975). The Equal Protection Clause does not require that all persons be treated alike. *See Noble v. United States Parole Comm'n,* 194 F.3d 152, 154 (D.C.Cir.1999). In considering whether a law or application of law that disadvantages one class of persons relative to another violates the Equal Protection Clause, the degree of scrutiny applied by the court depends on the type of classification at issue. *See Clark v. Jeter,* 486 U.S. 456, 461, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988).

A classification which treats different classes of people differently is always subject to at least rational-basis review: it must at least be rationally related to a

---

**27.** The plaintiffs aver numerous ways in which the CIA allegedly violated their right to effective assistance of counsel. *See* Am. Compl. ¶¶ 18–19, 21, 26, 32–35, 55, 82, 84 (refusing counsel access to documents, classified and unclassified—sometimes where a plaintiff sought to disclose the document(s) to counsel, sometimes where counsel requested access directly); ¶¶ 24–25 (refusing to allow plaintiff Conway to have her counsel present during interview by CIA Investigators); ¶ 34 (destruction of evidence); ¶¶ 70–72 (refusal to provide plaintiff C.T. with secure telecommunications with her attorney); ¶¶ 78–79 (urging plaintiff R.B. not to retain counsel in connection with CIA's review and revocation of his security clearance); ¶ 83 (interception of attorney-client-privileged telephone conversations).

legitimate governmental purpose. *See id.* Rational-basis review has traditionally been quite deferential. *See International Science & Technology Institute v. Inacom Communications, Inc.,* 106 F.3d 1146, 1156–57 (4th Cir.1997) ("Under this standard, the Act is entitled to a strong presumption of validity."). By contrast, "[c]lassifications based on race or national origin ... and classifications affecting fundamental rights ... are given the most exacting scrutiny. Between these extremes of rational basis review and strict scrutiny lies a level of intermediate scrutiny, which generally has been applied to discriminatory classifications based on sex or illegitimacy." [28] *Clark,* 486 U.S. at 461, 108 S.Ct. 1910; *accord Nicholas v. Riley,* 874 F.Supp. 10, 12–13 (D.D.C.1995).

> The plaintiffs argue that:
>
> the Notice violates equal protection because it creates a class of persons, those "employees of the CIA who retain private counsel to assist them in matters related to their employment" [quoting Am. Compl. ¶ 20], who thereby exercise their fundamental rights protected under the First and Fifth Amendments .... The rights protected under the First Amendment are fundamental rights for purposes of equal protection.

(Opp. at 38–39) (internal citations omitted) The plaintiffs argue that since the Notice burdens the exercise of their First Amendment right to counsel, a fundamental right, it is subject to strict scrutiny. (Opp. at 39) Even if there is a First Amendment right to counsel, and even if this right is a fundamental right for equal protection

purposes, the court has already determined that the plaintiffs have stated no violation of their First Amendment rights. The plaintiffs have thus failed to show that the Notice should be subject to strict scrutiny.

■ Accordingly, the court reviews the CIA's Notice under the rational-basis standard of equal protection. *Cf., e.g., Farmer v. Hawk–Sawyer,* 69 F.Supp.2d 120, 127 (D.D.C.1999).[29] The defendants contend that the Notice survives rational-basis review. (Mot. at 46) However, the CIA fails to identify a legitimate government interest to which the classification in the Notice rationally relates, nor does the CIA explain how the classification relates to such an interest. These matters are not self-evident. The defendants have thus failed to show that the plaintiffs can prove no set of facts in support of their equal protection claims that would entitle them to relief.

The court will therefore deny the defendants' motion to dismiss the plaintiffs' equal-protection claims.

### 4. Have the plaintiffs stated a Fourth Amendment claim?

The plaintiffs contend that the CIA violated their Fourth Amendment rights. (Am.Compl.¶¶ 103, 107) The defendants move to dismiss the plaintiffs' Fourth Amendment claims under Rule 12(b)(6) for failure to state a claim. (Mot. at 46–47) Specifically, the plaintiffs argue that plaintiff Mitford states a Fourth Amendment claim by averring that the "Defendants, including John and Jane Does Nos. 26

---

**28.** To pass strict scrutiny, the State must show that its "classification has been precisely tailored to serve a compelling governmental interest." *Plyler v. Doe,* 457 U.S. 202, 217, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982); *see also Hutchins v. District of Columbia,* 188 F.3d 531, 536 (D.C.Cir.1999) (*en banc* ).

**29.** In *Farmer,* this court was asked to review a Bureau of Prisons policy requiring that transsexual prisoners show they received hormone therapy prior to incarceration as a condition of the Bureau providing such therapy, while inmates suffering other "mental illnesses"

were not required to document prior treatment in order to receive treatment while incarcerated. The court held that the policy was rationally related to the legitimate government interest in protecting the health of inmates, because "gender identity disorder is very difficult to diagnose and treat," "hormone therapy brings about drastic and permanent physical changes," and "[a] patient's self-reporting of his or her condition and current level of treatment cannot be" relied upon. *See Farmer,* 69 F.Supp.2d at 127.

through 30" intercepted a telephone call between him and his lawyer (Am. Compl.¶ 83), and that the plaintiffs all state Fourth Amendment claims by alleging that "Defendants routinely intercept and monitor substantive attorney-client or work-product privileged telephone discussions between CIA employees and ... [counsel for the plaintiffs in the instant case] when one party is located in a CIA facility." (Am. Compl. ¶ 87; Opp. at 40–42)

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated ...." U.S. Const. Am. IV. "The touchstone of Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.'" *California v. Ciraolo,* 476 U.S. 207, 211, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986) (quoting *Katz v. United States,* 389 U.S. 347, 360, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring)). A person has such an expectation if two requirements are satisfied: "first that a person has exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'" *Katz,* 389 U.S. at 361, 88 S.Ct. 507 (Harlan, J., concurring); *United States v. Hinckley,* 525 F.Supp. 1342, 1360 (D.D.C.1981), *aff'd e.g.,* 672 F.2d 115 (D.C.Cir.1982). Thus "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.... But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Katz,* 389 U.S. at 351–52, 88 S.Ct. 507 (majority opinion); *accord Reporters Committee for Freedom of the Press v. American Telephone & Telegraph Co.,* 593 F.2d 1030, 1043 n. 32 (D.C.Cir.1978), *cert. den.,* 440 U.S. 949, 99 S.Ct. 1431, 59 L.Ed.2d 639 (1979).

 To dismiss the plaintiffs' Fourth-Amendment claims for failure to state a claim, the defendants would have to show that, *as a matter of law,* a CIA employee does not have a reasonable expectation of privacy in telephone conversations made while at a CIA facility. This proposition is not self-evident, and the defendants have failed even to state it, let alone adequately support it with legal authority. (Mot. at 47; Reply at 20–21)

The defendants also seem to argue, by implication, that even if CIA employees had a reasonable expectation of privacy as to the phone conversations at CIA facilities, the plaintiffs here have not averred facts sufficient to support a finding that the CIA unreasonably invaded that privacy. With respect to plaintiff Mitford, the defendants argue, "it appears Mitford has no evidence that an interception occurred." (Reply at 20) This assertion is inapposite and not relevant to the standard for a motion to dismiss. On a motion to dismiss, the court does not probe the weight of plaintiff's evidence or assess whether the plaintiff's evidence is credible or persuasive. Rather, the court assumes, for purposes of the motion to dismiss, that the plaintiff's factual averments are true and accurate. *See Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994). Dismissal is warranted only when the defendant shows that the plaintiff could not recover *even if he were able to prove all his factual averments.* The defendants' argument on the Fourth Amendment claims is more suited to a motion for summary judgment. *See ACLU Found. v. Barr,* 952 F.2d 457, 467 (D.C.Cir.1991) ("Rule 12(b)(6) is not a device for testing the truth of what is asserted or for determining whether a plaintiff has any evidence to back up what is in the complaint.") The defendants will have the opportunity to file such a motion at a later stage of this action.

With respect to the plaintiffs other than Mitford, the plaintiffs allege generally that "Defendants routinely intercept and monitor substantive attorney-client or work-product privileged telephone discussions

between CIA employees and ... [counsel for the plaintiffs in the instant case] when one party is located in a CIA facility" (Am.Compl.¶ 87) The defendants contend that such a general allegation is inadequate to establish an claim that the plaintiffs in this case were unreasonably subject to interception and monitoring. (Reply at 20) The court on a motion to dismiss under Rule 12(b) is to assume the truth of the plaintiff's allegations and draw all reasonable inferences therefrom in favor of the plaintiff. *See Kowal,* 16 F.3d at 1276. It is not unreasonable to infer that if the CIA *routinely* intercepted and monitored telephone conversations between CIA employees and the plaintiffs' counsel when one party was located in a CIA facility, the CIA did so if and when the plaintiffs engaged in such conversations. And it is possible that the plaintiffs engaged in conversations with counsel while in a CIA facility. The complaint, however, does not so allege, nor can such be reasonably inferred from the facts averred. Therefore, the complaint does not allege facts sufficient to state a claim that the plaintiffs, other than Mitford, have been subject to unreasonable search or seizure.

Accordingly, the court will dismiss *without prejudice* the Fourth Amendment claims of all plaintiffs except Mitford. The plaintiffs may move for leave to file an amended complaint with respect to the allegations supporting their Fourth Amendment claims by the date indicated in the court's Initial Scheduling and Procedures Order. If the plaintiffs file a second amended complaint, the defendants shall be free to file a motion to dismiss the newly supported Fourth Amendment claims. The court denies the defendants' motion to dismiss as to plaintiff Mitford's Fourth Amendment claim.

### H. The plaintiffs' *Bivens* claims against CIA Director Tenet

The plaintiffs seek an award of monetary damages against CIA Director Tenet pursuant to *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The defendants contend that the plaintiffs' *Bivens* claims must be dismissed because: [1] Director Tenet is shielded from the *Bivens* claims by official immunity; [2] the court lacks personal jurisdiction over Director Tenet and [3] venue is improper. (Mot. at 47–51) For the reasons which follow, the court agrees that the plaintiffs' *Bivens* claims are barred by official immunity.

 Qualified immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Zweibon v. Mitchell,* 720 F.2d 162, 168 (D.C.Cir.1983), *cert. den.,* 469 U.S. 880, 105 S.Ct. 244, 83 L.Ed.2d 182 (1984). In order to spare officials the burdens of discovery on the basis of allegations that will not ultimately support a judgment against them, a complaint asserting a claim subject to qualified immunity (i.e. seeking damages from an official for alleged illegal conduct in the performance of a discretionary function) must meet a heightened pleading standard. Such a "complaint must be sufficiently detailed to enable the district court to decide at the outset whether [the plaintiff's] action may proceed to discovery and trial." *Hunter v. D.C.,* 943 F.2d 69, 75 (D.C.Cir.1991). The complaint must state specific facts indicating that the official violated a clearly established statutory or constitutional right of which a reasonable official should have known. *See id.* at 76.

 The instant complaint does not offer many specific allegations regarding defendant Tenet. The plaintiffs complain of "regulations, policies and procedures" that Tenet "promulgated and/or enforced," the execution of which violated the plaintiffs' constitutional rights. (Am. Compl.¶ 113) Such a general allegation is

not sufficient for the court to decide that the plaintiffs' action may "proceed to discovery and trial." The complaint does not tell the court whether defendant Tenet promulgated *or* enforced the "regulations, policies and procedures" in question, or did both, nor does it tell the court what role defendant Tenet allegedly played in promulgating or enforcing. Allegations that promulgation or enforcement occurred on his watch would be insufficient. The doctrine of *respondeat superior* cannot be invoked in a *Bivens* action. *See Cameron v. Thornburgh,* 983 F.2d 253, 258 (D.C.Cir. 1993); *see, e.g., Risley v. Hawk,* 918 F.Supp. 18, 23–24 (D.D.C.1996), *aff'd,* 108 F.3d 1396, 1396–97 (D.C.Cir.1997) (*per curiam*) (dismissing *Bivens* claims where the plaintiff "ha[d] not alleged that any of [the defendant officials] ... participated *directly* in the prison-related activities ... that the plaintiff alleges violated his constitutional rights") (emphasis added).

Given that the plaintiffs have failed to meet the heightened pleading requirement governing claims subject to qualified official immunity, the plaintiffs' *Bivens* claims against defendant Tenet will be dismissed.

## I. Do the plaintiffs have standing?

The defendants argue that the named plaintiffs in this as-yet-uncertified class action lack standing to sue. (Mot. at 18–23) For the reasons which follow, the court agrees in part and disagrees in part.

 Standing requires three elements. First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party who is

not before the court. Third, it must be likely, as opposed to merely speculative, that the injury would be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Wyoming Outdoor Council v. United States Forest Serv.,* 165 F.3d 43, 48 (D.C.Cir. 1999). The defendants argue that the named plaintiffs have failed to satisfy the injury-in-fact requirement. They argue that each plaintiff's claimed injury is being obstructed from pursuing legal remedies, but that the plaintiffs have failed to satisfy the injury-in-fact requirement by failing to specify what legal remedies they have been obstructed from pursuing. (Mot. at 20)

The court will analyze the plaintiffs' standing only with respect to claims that the court has not already decided to dismiss (see above). These are:

— The claims of C.T. and R.B. that they have been deprived of their Fifth Amendment due process right to have a name-clearing hearing when subject to stigmatizing adverse employment actions by a government employer.

— Mr. Mitford's claim that the defendants violated his Fourth Amendment right to be free from unreasonable search and seizure by intercepting a telephone conversation between Mitford and his attorney.

— The plaintiffs' claims that the CIA violated their Fifth Amendment right to equal protection of the laws by according less favorable treatment to employees who seek to disclose official information to their counsel than to those CIA employees who would disclose official information to someone other than their counsel.

— The plaintiffs' Privacy Act claims for damages resulting from the CIA's maintaining inaccurate records.[30]

---

**30.** The court dismissed the plaintiffs' claims that the CIA violated the Privacy Act by refusing to amend inaccurate records, on the

ground that they failed to exhaust their administrative remedies. *See supra.*

The defendants have not made arguments specific to the plaintiffs' standing to assert any of these claims. The court will not of its own accord find that the plaintiffs fail to satisfy the injury-in-fact requirement. With respect to Mr. Mitford's Fourth Amendment claim, C.T. and R.B.'s due process claims, and the various plaintiffs' Privacy Act claims, the plaintiffs have alleged that they have personally suffered actual, concrete and particularized invasions of legally protected interests. (Am. Compl. ¶ 83 (Mitford's Fourth Amendment claim); ¶ 67 (C.T.'s due process claim); ¶ 77 (R.B.'s due process claim); ¶ 116 (plaintiffs' Privacy Act claims)) Thus, these plaintiffs have sufficiently alleged an injury in fact.

With respect to the equal protection claims, the issue of injury in fact is less clear. The complaint does not aver that each of the named plaintiffs was prevented from disclosing official information to their counsel. In fact, this averment is made only in connection with plaintiff Tilden, and then only inferentially. (Am. Compl. ¶¶ 32–33, 35) (alleging that Tilden was denied access to her security file and to other information and that these denials "obstructed and prevented ... [Mr. Krieger] from rendering, and Plaintiff Tilden (P) [*sic*] from receiving, effective assistance of counsel ....)" Accordingly, the court will dismiss *without prejudice* the equal protection claims. The plaintiffs shall be entitled to seek leave to amend the complaint with respect to their equal protection claims according to the schedule set forth in this court's Initial Scheduling and Procedures Order. If the plaintiffs amend their complaint in an attempt to bolster these claims, the defendants shall be free to file a motion to dismiss the plaintiffs' equal protection claims for lack of standing.

The defendants argue, and the plaintiffs concede, that the plaintiffs do not have standing to sue with respect to certain averred "examples" of ways in which "Defendants have acted or failed to act so as to obstruct or prevent ... counsel from rendering ... effective assistance of counsel," but which are not averred to have affected any of the named plaintiffs. (Am. Compl. ¶¶ 84–93; Mot. at 19; Opp. at 14 n. 10; Reply at 3) The plaintiffs have no standing to sue with respect to such "examples." The plaintiffs may sue only where they themselves have personally suffered an injury-in-fact which was causally connected to specific conduct complained of. *See id.*

### J. Exhaustion of administrative remedies

Lastly, the defendants contend that the plaintiffs' claims must be dismissed because the plaintiffs [1] are seeking judicial review of CIA personnel decisions and EEOC decisions (regarding discrimination complaints brought by some of the plaintiffs against the CIA) that are not final, and [2] have failed to exhaust their administrative remedies with respect to these decisions. (Mot. at 11–16) The defendants' arguments are inapplicable to any of the plaintiffs' surviving claims. The court does not read any of these surviving claims as seeking judicial review of CIA personnel decisions or EEOC decisions.

## V. CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss will be granted in part, denied in part and denied without prejudice in part. An order consistent with this Memorandum Opinion is separately and contemporaneously executed this *23d* day of March, 2000.

### ORDER

### Granting in Part and Denying in Part the Defendants' First Motion to Dismiss

For the reasons stated in this court's separately and contemporaneously executed Memorandum Opinion.

It is this *23d* day of March 2000

**ORDERED** that the defendants' motion is hereby **GRANTED in part, DENIED in part,** and **DENIED without prejudice in part,** as follows:

The motion to dismiss the claims against the "Doe" defendants for lack of service of process shall be **DENIED without prejudice,** *see Op. Section IV–A;* and it is

**FURTHER ORDERED** that the plaintiffs shall effect service of process on the "Doe" defendants within thirty days from the date of this order, and if they fail to effect proper service on a Doe defendant within that time and fail to offer a satisfactory explanation for such failure, the claims against such Doe defendant shall be dismissed without prejudice; and it is

**ORDERED** that the defendants' motion to dismiss the complaint on the ground of indefiniteness is hereby **DENIED without prejudice,** and defendants shall be free to file a motion for a more definite statement according to the timetable in the Initial Scheduling and Procedures Order, *see Op. Section IV–B;* and it is

**FURTHER ORDERED** that the defendants' motion to dismiss Count III for lack of subject-matter jurisdiction is hereby **DENIED,** *see Op. Section IV–C;* and it is

**ORDERED** that, to the extent the plaintiffs' Privacy Act claims seek to compel the defendants to amend records, said claims are **DISMISSED without prejudice** for failure to exhaust administrative remedies, *see Op. Section IV–D;* and it is

**FURTHER ORDERED** that, to the extent the plaintiffs' Privacy Act claims seek damages for adverse personnel actions allegedly attributable to the defendants' maintenance of inaccurate records, the motion to dismiss is **DENIED,** *see Op. Section IV–D;* and it is

**ORDERED** that the defendants' motion to dismiss the plaintiffs' Privacy Act claims for failure to comply with the Act's limitations period, and for failure to state a claim, is hereby **DENIED without prejudice,** *see Op. Section IV–D;*

**FURTHER ORDERED** that Count II is hereby **DISMISSED,** pursuant to sovereign immunity, to the extent it seeks monetary relief against the CIA, *see Op. Section IV–E;* and it is

**ORDERED** that the defendant's motion to dismiss claims for money damages against defendant Tenet is his official capacity is hereby **DENIED as moot** because the plaintiffs do not seek money damages against Mr. Tenet in his official capacity, *see Op. Section IV–F;* and it is

**FURTHER ORDERED** that the **Fifth Amendment Due Process claims** of all plaintiffs except C.T. and R.B. are hereby **DISMISSED,** *see Op. Section IV–G–1;* and it is

**ORDERED** that the defendants' motion to dismiss the Fifth Amendment Due Process claims of plaintiffs C.T. and R.B. is hereby **DENIED,** *see Op. Section IV–G–1;* and it is

**FURTHER ORDERED** that the plaintiffs' **First Amendment claims** shall be **DISMISSED** without prejudice, *see Mem. Op. Section IV–G–2;* and it is

**ORDERED** that the motion to dismiss **Equal Protection** claims is **DENIED,** *see Op. Section IV–G–3;* and it is

**FURTHER ORDERED** that the **Fourth Amendment claims** of all plaintiffs except Mr. Mitford are hereby **DISMISSED without prejudice,** *see Op. Section IV–G–4;* and it is

**ORDERED** that the motion to dismiss Mr. Mitford's **Fourth Amendment claims** is **DENIED,** *see Op. Section IV–G–4;* and it is

**ORDERED** that *Bivens* claims against Tenet are **DISMISSED,** *see Op. IV–H;* and it is

**FURTHER ORDERED** that the defendants' motion to dismiss for lack of standing is **DENIED** as to all claims except the Equal Protection claims, which are hereby **DISMISSED without prejudice,** *see Op. Section IV–I;* and it is

Unless otherwise specified, the denial of any portion of the defendants' motion to dismiss shall be **WITH** prejudice.

Unless otherwise specified, the dismissal of any portion of the plaintiffs' amended complaint shall be **WITH** prejudice.

**SO ORDERED.**