**Raymond C. BOWYER, Plaintiff–Appellant,**

v.

**The UNITED STATES DEPARTMENT OF AIR FORCE and Grissom Air Force Base, Defendants–Appellees.**

No. 88–1894.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 6, 1989.

Decided May 23, 1989.

Rehearing and Rehearing In Banc Denied July 19, 1989.

Mark T. Dykstra, Butler McCanna & Dykstra, Auburn, Ind., for plaintiff-appellant.

Cliford D. Johnson, Asst. U.S. Atty., South Bend, Ind., for defendants-appellees.

Before WOOD, Jr., POSNER, and MANION, Circuit Judges.

MANION, Circuit Judge.

Raymond C. Bowyer brought suit alleging that the United States Air Force (USAF) and Grissom Air Force Base (GAFB) (collectively defendants), had violated the Privacy Act of 1974. 5 U.S.C. § 552a. Bowyer had been a part-time seasonal employee at GAFB. Bowyer essentially complains that his supervisor maintained inaccurate, irrelevant, and incomplete records about him, which resulted in decisions not to rehire him in 1982, 1983, and 1984. This court reversed an earlier grant of summary judgment (on an issue unrelated to the one we address here). *Bowyer v. United States Dept. of Air Force*, 804 F.2d 428 (1986). After that decision, defendants moved to dismiss Bowyer's suit for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) on the basis of our decision in *Diliberti v. United States*, 817 F.2d 1259 (1987). The district court granted defendants' motion and dismissed the case. We affirm.

## I.

Bowyer was employed at GAFB as a seasonal heavy equipment operator during the winters of 1978–1981. Bowyer's supervisor (except for a short period) was James McClanahan, the Superintendent of Roads and Grounds at GAFB. Bowyer applied for a job in 1982, 1983, and 1984, but was not hired. After his 1982 employment application was rejected, in November of 1982, Bowyer approached Thor Christensen, a permanent roads and grounds employee at GAFB, and asked for a letter of reference. Bowyer explained to Christensen that he was having difficulty getting rehired and mentioned that it may have been because of a previous conflict he had had with McClanahan. Christensen confirmed Bowyer's suspicions, telling Bowyer that he had seen personal memos and files in McClanahan's desk drawer "that may relate to [your] problem...." Bowyer pressed Christensen on whether he had seen a file with Bowyer's name on it and

Christensen responded, "Ray, I am sure that there was one in there...."

On January 10, 1983, Bowyer filed a Freedom of Information Act request, seeking, among other things, "all records on file dealing with my work record at Grissom Air Force Base...." On February 14, 1983, Brig. Gen. Robert W. Norris responded to Bowyer's request. Included were six "memos for record," which pertained to Bowyer's employment at GAFB. *Bowyer* filed this suit some twenty-three months later on January 18, 1985.

Defendants filed a motion to dismiss for lack of subject matter jurisdiction based on *Diliberti, supra.* Defendants argued that Bowyer knew or had a reason to know that the records in question existed in November 1982 based on his conversation with Christensen. Because § 552a(g)(5)'s two-year statute of limitations is jurisdictional, defendants contended that Bowyer's untimely filing deprived the district court of jurisdiction. The district court agreed, finding that Bowyer knew the records existed in November 1982 but had waited longer than two years after that to file suit.

Up until the court's dismissal Bowyer had been represented by counsel. But acting *pro se*, Bowyer filed a motion under Fed.R.Civ.P. 59(e), seeking to alter or amend the district court's judgment. (Bowyer is again represented by counsel on appeal.) Bowyer advanced two grounds in support of his motion. The first was just a rehash of his initial argument that the statute of limitations did not begin to run until he had actual knowledge that allegedly erroneous records were being maintained. The second argument alleged that the Merit Systems Protection Board (Merit Board) had used the same allegedly erroneous documents in September 1983 (in deciding that Bowyer's non-selection was not in retaliation for having reported alleged misconduct on the part of his superiors), and that that constituted a separate and new Privacy Act violation, thus making his suit timely.

The district court allowed the parties to supplement their filings several times in connection with Bowyer's Rule 59(e) mo-

tion. At the eleventh hour and in response to one of defendants' supplementary filings, Bowyer added a third theory for extending the limitations period. He argued that McClanahan's statement in the spring of 1982 that he kept no files on temporary employees was a "willful misrepresentation," and that the limitations period did not commence until the misrepresentation was actually discovered. This did not happen until February 14, 1983, Bowyer argued, the date he received a response to his FOIA request.

The district court denied Bowyer's motion to alter or amend, and reaffirmed its initial holding that Bowyer had sufficient knowledge by November 1982 that records were being maintained to trigger the statute of limitations at that time. The court also rejected Bowyer's argument that the Merit Board's September 1983 use of the records constituted a separate violation of the Privacy Act. The district court, however, did not address Bowyer's third argument, in which he contended that McClanahan's alleged "willful misrepresentation" in effect tolled the limitations period until Bowyer actually discovered the misrepresentation.[1] The district court in all likelihood neglected to reach this issue due to the haphazard way in which the argument was presented. (We acknowledge that Bowyer was proceeding *pro se* and that the district court commended his excellent job; nevertheless the scattershot manner in which this argument was raised cannot escape mention.) In any event, it makes little difference since, as we discuss below, even if there was a willful misrepresentation, Bowyer discovered the misrepresentation when he learned there were documents in November 1982.

## II.

■ Section 552a(g)(5) of the Privacy Act provides:

An action to enforce any liability created under this section may be brought in the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, without regard to the amount in controversy, within two years from the date on which the cause of action arises, except that where an agency has materially and willfully misrepresented any information required under this section to be disclosed to an individual and the information so misrepresented is material to establishment of the liability of the agency to the individual under this section, the action may be brought at any time within two years after discovery by the individual of the misrepresentation.

In *Diliberti, supra,* we held this two-year limitations period to be jurisdictional because it is an "integral condition of the sovereign's consent to be sued under the Privacy Act." *Id.* at 1262. Consequently, the failure to file suit within the time period "deprives the federal courts of subject matter jurisdiction over the action." *Id.*

■ Because § 552a(g)(5)'s time limits are jurisdictional, it is Bowyer's burden to establish that they have been met. *Kontos v. Dept. of Labor,* 826 F.2d 573, 576 (7th Cir.1987). Both sides submitted documentary evidence in the form of affidavits, depositions, and declarations in connection with defendants' motion to dismiss. *See Crawford v. United States,* 796 F.2d 924, 928–29 (7th Cir.1986). District courts properly may look beyond the complaint's jurisdictional allegations and view whatever evidence has been submitted to determine whether in fact subject matter jurisdiction exists. *Grafon Corp. v. Hausermann,* 602 F.2d 781, 783 (7th Cir.1979). The facts presented may give rise to a factual controversy, "the resolution of which requires the district court to weigh the conflicting evi-

---

1. The district court thus made no finding as to whether there was such a misrepresentation. And it is far from clear whether there was any misrepresentation at all. While we will refrain from making factual determinations, we note that in McClanahan's second declaration, he ex-

plained that the reason he told Bowyer he did not keep records on temporary employees was because he considered his records pertaining to temporary employees to be unofficial, and that, as a result, he was not obligated to disclose their existence.

dence in arriving at the factual predicate upon which to base the legal conclusion that subject matter jurisdiction exists or . . . not." *Id.* We review these findings under the clearly erroneous standard. *Casio, Inc. v. S.M. & R. Co.,* 755 F.2d 528, 530 (7th Cir.1985) ("it is the character of the judge's finding as a finding of fact, rather than the character of the decision in which it is embodied, that brings the 'clearly erroneous' standard into play"). A finding is clearly erroneous only if, after reviewing the entire evidence, we are left "with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1970). " 'If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it.' " *Howland v. Kilquist,* 833 F.2d 639, 644 (7th Cir.1987) (quoting *Anderson,* 470 U.S. at 573–74, 105 S.Ct. at 1511).

■ Bowyer advances two arguments on appeal as to why his suit was timely. First, he argues that the statute of limitations should not have commenced until the time he discovered (a) that defendants misrepresented the existence of the records (McClanahan's statement in the spring of 1982 that he kept no records on temporaries), and (b) that the records contained erroneous information. Neither condition was met, Bowyer says, until he actually had physical possession of the records in question (this would be February 1983). Second, Bowyer contends that a separate violation of the Privacy Act occurred when the Merit Board reviewed the "memos for record" while investigating a complaint filed by Bowyer.

Section 552a(g)(5) states that, under ordinary circumstances, an action may be brought "within two years from the date on which the cause of action arises." In *Diliberti,* we held that the "critical issue in determining whether the plaintiff's action is barred by § 552a(g)(5) is the time at which the plaintiff first knew or had reason to know that the private records were be-

ing maintained." *Id.* at 1262. *See also Bergman v. United States,* 751 F.2d 314, 316 (10th Cir.1984), *cert. denied,* 474 U.S. 945, 106 S.Ct. 310, 88 L.Ed.2d 287 (1985). Thus, "the relevant fact is not when the plaintiff first had physical possession of the particular records, but rather when he first knew of the existence of the records." *Diliberti,* 817 F.2d at 1262–63. For this purpose, even "unsubstantiated hearsay and rumors" are enough to find knowledge sufficient to trigger the statute of limitations. *Id.* at 1263. Under this standard, it is not necessary that a plaintiff actually discover or possess improper records. That, we explained, only "strengthens the original cause of action which arose when the individual first had reason to believe that the records were being maintained." *Id.*

We agree with the district court: there can be no doubt that Bowyer knew or had reason to know in November 1982 that the records existed. Christensen's information was more reliable than mere "unsubstantiated hearsay and rumor." Christensen actually had been in McClanahan's desk, had seen several files, told Bowyer that those files may relate to his problem with McClanahan, and said in response to Bowyer's query asking whether there had been a file with Bowyer's name on it, "Ray, I am sure that there was one in there." Thus, by November 1982, Bowyer knew (or had a reason to know) of the allegedly erroneous records sufficient to trigger the statute of limitations, even if he did not actually know that the records were erroneous.[2] (Indeed, Bowyer admitted in pleadings filed in support of his motion to alter or amend, that he had "constructive notice" of the records by November 1982.)

That McClanahan previously denied keeping records on temporary or seasonal employees, does not undermine the district court's finding. McClanahan's statement was made during a meeting of GAFB's employees in the spring of 1982. According to Bowyer, McClanahan announced to the assembled employees that he kept a file

---

**2.** We must point out that whether the records in question are in fact erroneous has never been

determined. For our purposes, though, that is not important and we assume that they were.

on all section employees, and that anyone wishing to see his file could do so. When Bowyer asked to see his file, McClanahan responded that he did not keep "records on you temporaries." (*See supra* n. 1.) This occurred several months before Bowyer's conversation with Christensen. Moreover, it was seemingly contradicted by Christensen's comments. Indeed, it is apparent that Bowyer believed such records existed notwithstanding McClanahan's earlier statement, given the fact that Bowyer made a FOIA request for his work records within weeks of talking to Christensen. In light of the Christensen conversation and Bowyer's FOIA request, the district court rejected Bowyer's claim that he didn't know such records existed until February 1983. We cannot say that the district court's finding was clearly erroneous.

■ But, Bowyer asks, how could he be expected to have brought suit if he did not know the records were in fact erroneous as opposed to only knowing that they existed? In *Diliberti*, we explained that a potential plaintiff's knowledge of the records gave rise to a "duty to inquire" into the matter. *Id.* at 1264. Bowyer was not required "to rush into court and file suit" in November 1982, *id.;* rather, he had two years from that time to investigate whether sufficient factual and legal bases existed for bringing suit. We note that initially Bowyer was proceeding right on course by making his FOIA request in January 1983. And when he received the documents in response to his request, his claim presumably was

strengthened (assuming that the documents were indeed erroneous). However, the record does not show that any further inquiry or investigation occurred between then and the time he filed suit. Bowyer did nothing with this information (except to file a complaint with the Merit Board) until January 18, 1985 when he filed suit. That was too late.

■ Bowyer next argues that McClanahan willfully misrepresented (concealed) the existence of the "memos for record," and that, as a result, the statute of limitations did not begin to run until he actually discovered the misrepresentation. By "actually discovered", Bowyer means that he must have had physical possession of the documents.

Section 552a(g)(5) says that, in event there has been a material and willful misrepresentation of mandatorily disclosable information, a plaintiff has two years "after the discovery ... of the misrepresentation to bring suit." In *Diliberti*, we noted that "[b]y focusing on when the plaintiff first knew or had reason to know of an error in maintaining his records, the *Bergman* test incorporates [the willful misrepresentation] provision." [3] *Diliberti*, 817 F.2d at 1262 n. 1. In other words, the standard is the same for both parts of § 552a(g)(5). *But see Tijerina v. Walters*, 821 F.2d 789, 798 (D.C.Cir.1987) (§ 552a(g)(5)'s willful misrepresentation clause "allows the [limitations] period to commence upon actual discovery of the misrepresentation....").[4]

---

3. The *Bergman* test which we followed in *Diliberti* holds that a cause of action arises under the Privacy Act when (1) an error was made in maintaining the plaintiff's records; (2) the plaintiff was wronged by such error; and (3) the plaintiff either knew or had reason to know of such error. *Id.* at 1262.

4. In *Tijerina*, the government contended § 552a(g)(5) contained two different limitations periods. The first period (the "normal statutory period"), it argued, commenced at the time of the alleged violation, regardless of whether the potential plaintiff was or should have been aware of the agency's action. According to the government, this was the only way to "make[ ] sense" of § 552a(g)(5) in light of the section's two limitations periods. *Id.* at 797. The D.C. Circuit rejected the government's position,

choosing instead to follow the reasoning in *Diliberti* and *Bergman*, namely, that the normal limitations period did not start to run until a plaintiff knew or had a reason to know of the alleged violation. The court added that its holding did "not read out of existence" the willful misrepresentation clause. *Id.* at 798. In cases involving willful misrepresentations of mandatorily disclosable documents (which was not an issue in *Tijerina*), the D.C.Circuit said it would require actual discovery to commence the limitations period. Bowyer equates actual discovery with physical possession of the documents.

Requiring physical possession of the documents is superfluous. If a plaintiff knew of a violation, he must, by definition, have "actually discovered" the violation regardless of his physi-

McClanahan's denial that he kept records on seasonal or temporary employees amounted to a material and willful misrepresentation, according to Bowyer. (The misrepresentation was the concealment of the records.) Even assuming this is so, Bowyer discovered the misrepresentation (the concealment) in November 1982. By then he knew or had reason to know that the "memos for record" existed based on his conversation with Christensen. Bowyer's FOIA request made on January 10, 1983 (also more than two years before suit was filed) is a further indication that he knew such records existed more than two years before he filed suit. Thus, Bowyer knew (or had reason to know) of the alleged misrepresentation by November 1982 and the statute of limitations began to run at that time.

Finally, Bowyer argues that a separate, and later, violation of the Privacy Act occurred in September 1983, when the Merit Board considered the "memos for record" in connection with a complaint filed by Bowyer. By characterizing this as a separate violation, Bowyer is able to contend that his suit was filed well within two years of the alleged later violation.

Bowyer had complained to the Merit Board that he had not been rehired in retaliation for his having filed a report which charged that irregularities had occurred in his department at GAFB. The Merit Board reviewed McClanahan's "memos for record" (which Bowyer supplied) in making its determination that no reasonable grounds existed to believe Bowyer's nonselection was a reprisal for his earlier report. Bowyer argues that using the records constituted a separate violation. We disagree.

We considered and rejected the same argument in *Diliberti*. There, the plaintiff claimed that private records were used by his supervisors in evaluating his work performance while he was in the Army Reserve and, upon his retirement from the military, as a full-time civilian employee. He filed suit on February 1, 1984, alleging that the private records adversely affected his career by depriving him of deserved promotions and forcing him to accept early retirement in December 1983 (which resulted in lower pension benefits). *Id.* at 1260. We determined that the plaintiff knew or should have known by the fall of 1981 that the defendants were maintaining a secret file on him, and that this was when the statute of limitations began to run. But the plaintiff also argued that the government's use of the private records to force him into early retirement in December 1983 constituted a new and continuing unlawful act which was within two years of the filing of his suit. In rejecting that argument, we agreed with the Tenth Circuit's reasoning in *Bergman*, that a new cause of action does not arise upon " 'each and every subsequent adverse determination based on erroneous records.' " *Diliberti*, 817 F.2d at 1264 (quoting *Bergman*, 751 F.2d at 317).

Bowyer contends that the same allegedly erroneous documents which prevented him from being rehired in 1982 also gave rise to a new violation when they were used by the Merit Board in September 1983 in investigating his claim. As *Diliberti* makes clear, this was not a separate wrong. The underlying documents were the same in both cases. Bowyer "has merely alleged a continuing adverse consequence of [allegedly] prior unlawful conduct." *Diliberti*, at 1264. To accept such "an argument . . . 'would, in practical effect, mean that the two-year statute [of limitations] would nev-

cal possession of the documents in question. If a plaintiff had reason to know of an alleged violation, he had a duty to investigate into the matter. His actual discovery thus would only serve to strengthen his cause of action which arose when he first had reason to believe there was a violation. *Diliberti* at 1263.

Equating actual discovery with physical possession would in some cases increase the time to file a complaint. This is one of those cases. However, this case also demonstrates the ab-

sence of any need for such extra time. Using November 1982 as the starting date for the statute of limitations, from the record it appears that Bowyer faced no obstacles to filing suit by November 1984. Indeed, by February 1983 he had all the information necessary to file his complaint. The record supplies no reason why this suit could not have been filed earlier, and no argument is made as to how this would work any unfairness on Bowyer.

er run.'" *Id.* (quoting *Bergman,* 751 F.2d at 317).[5]

Because Bowyer's Privacy Act suit is barred by § 552a(g)(5), we affirm the district court's dismissal for lack of subject matter jurisdiction.

Affirmed.

---

5. Indeed, in this case it was Bowyer himself, not the defendants, who triggered the alleged new and continuing violation. For it was Bowyer who submitted McClanahan's notes to the Merit Board. If a plaintiff could, in effect, commit or cause to be committed, separate violations of the Privacy Act, the limitations period conceivably would never run.