UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

STUART M. SELDOWITZ,
    *Plaintiff-Appellant,*

v.

THE OFFICE OF THE INSPECTOR
GENERAL, U. S. Department of State,
    *Defendant-Appellee.*

No. 00-1142

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(CA-99-1031-A)

Argued: September 25, 2000

Decided: November 13, 2000

Before MICHAEL, MOTZ, and TRAXLER, Circuit Judges.

_____

Affirmed in part, reversed in part, and remanded by unpublished per
curiam opinion.

_____

## COUNSEL

**ARGUED:** Andrew Grosso, Washington, D.C., for Appellant. Jeri
Kaylene Somers, Assistant United States Attorney, Alexandria, Vir-
ginia, for Appellee. **ON BRIEF:** William M. Palmer, Washington,
D.C., for Appellant. Helen F. Fahey, United States Attorney, Alexan-
dria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Stuart M. Seldowitz appeals the district court's order dismissing as barred by the statute of limitations Counts One and Two of his Privacy Act claim, and the district court's order granting summary judgment to the government on Count Three. We affirm in part, reverse in part, and remand.

## I.

The facts, viewed in the light most favorable to Seldowitz, are as follows. Seldowitz, a career foreign service officer, was assigned in 1989 to the Office of Strategic Nuclear Policy. In this capacity, Seldowitz served on the United States delegation to the Nuclear Space Talks in Geneva, Switzerland. Seldowitz's wife, Rosalinda, also traveled to Geneva, serving as the secretary to a deputy negotiator. Seldowitz received per diem paid by the Bureau of Political/Military Affairs, and his wife received per diem paid by the Arms Control Agency.

The Seldowitzes rented a private apartment in Geneva, and each obtained a separate receipt from the landlady. Because the receipts reflected the entire amount of rent, Seldowitz crossed out the number of Swiss Francs paid and wrote in half the amount. After submitting the receipts, Seldowitz was told by an administrator in the Bureau of Political/Military Affairs not to annotate the receipts because the per diem amount was not contingent on how much Seldowitz paid for lodging. After this conversation, Seldowitz did not annotate future receipts. However, Seldowitz does not dispute that the entire amount of the rental appeared on the travel voucher which he signed.[1]

---

[1] Based on the record before us, it is unclear whether Seldowitz was on a strict per diem or whether the amount he received was contingent on his expenses.

In 1990, the Office of Audits of the State Department's Inspector General reviewed the travel vouchers of the Geneva delegation. Based on this audit, the Office of the Inspector General (OIG) investigated Seldowitz for submitting a false claim against the United States as a result of amounts claimed on his travel voucher. The findings of the investigation were turned over to the United States Attorney's Office for the Eastern District of Virginia. In 1995, the United States Attorney informed Seldowitz that he was contemplating a civil prosecution under the False Claims Act, *see* 31 U.S.C.A. §§ 3729-33 (West 1983 & Supp. 2000), based on a report prepared by the OIG.

Seldowitz then met with officials from the State Department, the OIG, and the United States Attorney's Office to discuss the possible civil prosecution. During the meeting Seldowitz mentioned that he had annotated the first housing receipts to show only half of the housing expenses, and an AUSA then showed him allegedly the same receipts from the OIG's files which did not reflect any annotation. Shortly thereafter, Seldowitz entered into a settlement agreement with the government in which he agreed to pay restitution of $15,000.

Seldowitz later requested copies of his travel vouchers from the National Finance Center and he received the copies in October 1995. Included in the packet from the National Finance Center were annotated receipts showing half the amount of rent. Seldowitz also requested in the fall of 1995 that his attorney obtain copies of the OIG voucher documents, including the receipts showing no annotations. Seldowitz received these materials on April 17, 1996, and for the first time made a side-by-side comparison of the annotated and unannotated receipts.

In March 1998, Seldowitz requested pursuant to the Privacy Act, *see* 5 U.S.C.A. § 552a (West 1996 & Supp. 2000), that the State Department's records "be amended in order to accurately reflect that Mr. Seldowitz properly followed all Department procedures when submitting his voucher requests." J.A. 218. The Office of Information Resources Management responded that it would be improper to consider amending records because the Integrity Committee of the President's Council on Integrity and Efficiency was investigating a complaint filed by Seldowitz regarding the OIG investigation. Seldowitz appealed this decision, and an appeals officer affirmed that the

proper course was to suspend action pending completion of the Integrity Committee's investigation.

On April 9, 1998, Seldowitz filed a complaint in the United States District Court for the District of Columbia, and amended the complaint on August 13, 1998. The case was transferred to the United States District Court for the Eastern District of Virginia on June 30, 1999. Count One alleged that the State Department failed to maintain accurate records in violation of 5 U.S.C.A. § 552a(g)(1)(C), (4). Count Two alleged that the State Department wrongfully threatened a False Claims Act prosecution and coerced a settlement in violation of 5 U.S.C.A. § 552a(g)(1)(D), (4). Count Three alleged improper refusal to amend records in violation of 5 U.S.C.A. § 552a(g)(1)(A). The district court dismissed Counts One and Two on statute of limitations grounds, and later granted summary judgment in favor of the government on Count Three. Seldowitz appeals.

II.

Seldowitz challenges the district court's dismissal of Counts One and Two of the complaint as time barred. Under Counts One and Two Seldowitz alleged that the government violated provisions of the Privacy Act, which require agencies to keep accurate records "necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record." 5 U.S.C.A. § 552a(g)(1)(C). Suit must be brought "within two years from the date on which the cause of action arises, except that where an agency has materially and willfully misrepresented any information required under this section to be disclosed to an individual." 5 U.S.C.A. § 552a(g)(5). Seldowitz acknowledges that on June 15, 1995, an AUSA showed him two unannotated receipts relating to the May 1990 voucher, and that he received copies of his annotated vouchers from the National Finance Center on October 5, 1995. However, Seldowitz did not file his original complaint until April 9, 1998—more than two and one half years after he had been shown the unannotated receipts during the meeting with the AUSA.

Seldowitz argues that the misrepresentation exception applies because he did not obtain a copy of the unannotated receipts shown

to him by the AUSA until April 17, 1996, when his attorney forwarded copies to him. In support of his position, Seldowitz points the court to *Tijerina v. Walters*, 821 F.2d 789 (D.C. Cir. 1987). In *Tijerina*, the Veteran's Administration Office of the Inspector General on July 19, 1982, disclosed to the Texas Board of Bar Examiners that Tijerina had falsified a loan application but that he had not been prosecuted because the government had not sustained a loss. *See id.* at 792. Tijerina did not discover the OIG disclosure until October 1983, and he disputed the OIG's reason for failing to prosecute him. Tijerina filed suit against the OIG under the Privacy Act on July 30, 1984, but the district court dismissed the claim because the statute of limitations, according to the district court, began to run on July 19, 1982—the date of the communication to the bar examiners. The District of Columbia Circuit reversed, holding that the statute of limitations did not begin to run until Tijerina knew or should have known of the OIG's July 1982 letter, which was October 1983. *See id.* at 798.

We believe that *Tijerina* supports the district court's statute of limitations analysis. In the present case, Seldowitz was aware of the alleged inaccuracies when the AUSA showed him the unannotated receipts on June 15, 1995. At that point, consistent with *Tijerina*, the statute of limitations began to run. Seldowitz had actual knowledge of the alleged error, and the fact that he did not make a physical comparison of the two sets of receipts until April 17, 1996, makes no difference. *See Bowyer v. United States Dep't of Air Force*, 875 F.2d 632, 637 n.4 (7th Cir. 1989) (rejecting the argument that a plaintiff must have actual possession of all relevant documents before the limitations period begins to run). Accordingly, the district court correctly concluded that Counts One and Two are barred by the statute of limitations.

### III.

Under the Privacy Act, an individual alleging inaccuracies in agency records may "request amendment of a record pertaining to him." 5 U.S.C.A. § 552a(d)(2). However, the statute contains general and specific exemptions. The general exemption provision provides that "an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws" may adopt rules exempting records from the § 552a(d) access and

amendment provisions. 5 U.S.C.A. § 552a(j)(2). The specific exemption provision provides that an agency may issue rules exempting "investigatory material compiled for law enforcement purposes, other than material within the scope of subsection(j)(2)." 5 U.S.C.A. § 552a(k)(2). Under both the general and specific exemptions, the promulgated rules must state "why the system of records is to be exempted." 5 U.S.C.A. § 552a (j), (k); *see also Ryan v. Department of Justice*, 595 F.2d 954, 957 (4th Cir. 1979) (explaining what procedures an agency must take to exempt records under the Privacy Act).

The first set of records Seldowitz seeks changes to under Count Three of the complaint are the OIG records compiled while OIG was investigating Seldowitz for a possible False Claims Act violation. The OIG believed that Seldowitz and his wife "submitted duplicate and altered receipts for lodging expenses and thus acted with reckless disregard for the truth or falsity of the information they were providing to the United States." J.A. 121. Although an AUSA later made a decision to pursue a civil prosecution, it appears clear that the OIG investigators contemplated a possible criminal prosecution. Seldowitz does not dispute that the OIG's principal function is law enforcement or that the OIG's records in question were related to the False Claims Act investigation. Pointing to 22 C.F.R. § 171.32(h) (2000), Seldowitz argues that records of investigations are no longer exempted after "completion of the investigative and judicial processes."[2] And because his case has long been closed, Seldowitz believes that the records in question are no longer shielded from the Privacy Act. We disagree.

---

[2]Section 172.32(h) exempts the following:

Records originated by another agency when that agency has determined that the record is exempt under [5 U.S.C. 552a (j)]. Also, pursuant to Section (j)(2) of the Act, records compiled by the Special Assignment Staff, the Command Center, and the Passport and Visa Fraud Branch of the Office of Security and by the [I]nspector General may be exempted from the requirements of any part of the Act except subsections (b), (c)(1) and (2), (e)(4)(A) through (F), (e)(6), (7), (9), (10), and (11), and (i) to the extent necessary to assure the effective completion of the investigative and judicial processes.

Section 172.32(h) applies only to "[r]ecords originated by another agency when that agency has determined that the record is exempt" under 5 U.S.C. § 522a. Accordingly, the language of § 172.32(h) making reference to the completion of the investigative and judicial process is inapplicable. The proper section in this case is 22 C.F.R. § 172.32(i), which provides that "[r]ecords of the Inspector General" "are exempted under 5 U.S.C. § 552a(j) to the extent authorized and determined by the agency." The OIG records fall squarely within the general exemption which permits exclusion of records "pertaining to the enforcement of criminal laws," 5 U.S.C.A. § 552a(j)(2), and the OIG has properly exempted the investigatory records. Consequently, the district court did not err in granting summary judgment to the OIG as to its records of the False Claims Act investigation.

The second set of records Seldowitz seeks amendments to are the records compiled by the OIG Office of Audits. These records were compiled in Geneva, and, as a result of the audit, thirty-two cases of suspected travel voucher fraud were referred to OIG investigators for further review. Seldowitz describes these records as compiled for administrative and fiscal purposes, and argues that they are not covered by either the general or specific exemptions of 5 U.S.C.A. § 552a. Again, we disagree.

Even if we assume that Seldowitz is correct that the principal function of the audit department does not "pertain[ ] to the enforcement of criminal laws," and therefore the general exemption does not apply, Seldowitz cannot escape § 552a(k)(2) which permits exemption of "investigatory material compiled for law enforcement purposes, other than material within the scope of subsection (j)(2)." 5 U.S.C.A. § 552a(k)(2); *see also Strang v. United States Arms Control & Disarmament Agency*, 864 F.2d 859, 862 (D.C. Cir. 1989) (giving broad construction to term "law enforcement" as used in § 552a(k)(2)). Without question, the audit records were compiled with an eye towards possible prosecutions of travel voucher fraud, and OIG officers eventually opened ten investigations. As required, 22 C.F.R. § 171.32(b) makes specific mention of "[i]nvesitgatory material compiled for law enforcement purposes[ ] other than material within the scope of 5 U.S.C. 552a(j)(2)," and we can discern no limitation in the regulations on this exemption. Hence, the district court did not err in granting summary judgment as to the audit records.

The final set of records Seldowitz seeks changes to are the OIG internal review records responding to allegations of OIG misconduct regarding its investigation of the Geneva delegation's travel vouchers. The internal review was not undertaken "to assess the guilt or innocence" of the employees who had complained about the OIG's handling of the voucher investigation, J.A. 133, but rather was commenced to determine whether the OIG's investigators should adopt additional procedures to ensure impartiality. The result of the internal review was a number of recommendations ranging from continuing education for investigators to delinking career advancement with prosecutorial results.

Unlike the other two sets of records considered, the internal review records have no connection to law enforcement purposes. The internal review was simply meant to streamline procedures and to reform investigative techniques which had led to much hostility between OIG officials and members of the arms control delegation. Accordingly, neither the general or specific exemption is applicable.

The exemptions aside, the government argues that the internal review records are not retrievable by name, and therefore are not covered by the Privacy Act. *See* 5 U.S.C.A. § 552a(a)(4), (5) (specifying that records covered by the Privacy Act must be retrievable by some "identifying particular assigned to the individual"). In support of this contention, the government offers two affidavits from OIG officials. At appellate argument, the government suggested that these affidavits were presumptively correct and that Seldowitz was not entitled to discovery. In fact, the government instructed its witnesses not to appear for depositions which would have addressed this issue. We cannot agree with the government that Seldowitz was not entitled to discovery on this matter and that summary judgment was properly decided based upon the affidavits.

Federal Rule of Civil Procedure 26(b)(1), in pertinent part, provides that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." *See also Ralston Purina Co. v. McFarland*, 550 F.2d 967, 973 (4th Cir. 1977) (noting that "[t]he broad scope of discovery is evident in Rule 26(b)(1)"). Discovery concerning the records in question will likely resolve whether the records are retrievable within

the meaning of the Privacy Act. Seldowitz should not be forced in a situation like this to accept from a government official an affidavit stating that the records have no identifying particular assigned to Seldowitz.[3] Hence, the district court erred in granting summary judgment as to the internal review records.[4]

## IV.

For the foregoing reasons, we affirm the district court's dismissal of Counts One and Two. We also affirm the grant of summary judgment as to the audit records and the records of the investigation. However, we reverse the grant of summary judgment on the internal records and remand for discovery.

*AFFIRMED IN PART, REVERSED IN PART,*
*AND REMANDED*

---

[3]The government at appellate argument also represented that the internal review records sought by Seldowitz were destroyed in January 1998. Again, this is a matter for discovery, and Seldowitz is not required to simply accept an affidavit from a government official stating that the records no longer exist.

[4]Seldowitz also argues that the exemptions must be asserted at the administrative level and may not be asserted in the course of judicial proceedings. We reject this argument. In similar cases we have held that an agency does not waive exemptions "by not raising them during the administrative process." *Young v. CIA*, 972 F.2d 536, 538 (4th Cir. 1992) (dealing with FOIA exemptions).