Anthony L. FARRERO, Plaintiff,

v.

NATIONAL AERONAUTICS AND SPACE ADMINISTRATION, Defendant.

No. Civ.A.01–0016(RMU).

United States District Court, District of Columbia.

Nov. 5, 2001.

Anthony L. Farerro, Orlando, FL, for plaintiffs.

Mary Jane Rieser, U.S. Attorney's Office, Washington, DC, for defendant.

## MEMORANDUM OPINION

URBINA, District Judge.

### GRANTING THE DEFENDANT'S MOTION TO DISMISS

### I. INTRODUCTION

This case arises out of a decade-long strained relationship between a former employee and employer. Anthony L. Farrero ("the plaintiff" or "Mr. Farrero") brings this action against his former employer, the National Aeronautics and Space Administration ("the defendant" or "NASA"). Mr. Farrero claims that NASA violated the Privacy Act of 1974, 5 U.S.C. § 552a, by fabricating and maintaining false information about him and by releasing it to other agencies. He seeks declaratory and monetary relief. NASA filed a motion to dismiss Mr. Farrero's complaint, or in the alternative, for summary judgment. For the reasons that follow, the

court will grant the defendant's motion to dismiss.

### II. BACKGROUND

Mr. Farrero started as a design engineer for NASA on September 24, 1990. *See* Am.Compl. ("Compl.") at 4; Def.'s Mot. to Dismiss or, in the alternative, for Summ.J. ("Mot. to Dismiss") at 3. His job responsibilities included oversight of contractors. *See id.* In 1992, he advised senior NASA officials of alleged "contractor deficiencies and negligence" by an agency supervisor. *See id.* According to Mr. Farrero, this prompted retaliation by various NASA officials, including two personnel actions resulting in suspension for a total of 13 days. *See id.;* Mot. to Dismiss at 3.

Mr. Farrero appealed these personnel actions to the Merit Systems Protection Board ("MSPB"). *See* Compl. at 5. This appeal resulted in a settlement agreement ("SA93"), dated April 7, 1993, between Mr. Farrero and NASA. *See id.* In exchange for voiding the two personnel actions, Mr. Farrero resigned under the terms of SA93. *See id.* This agreement, however, did not end the dispute. Mr. Farrero subsequently filed MSPB enforcement actions in which he alleged that NASA violated a confidentiality provision in SA93. *See id.* The MSPB agreed, and voided SA93 on May 11, 1998. *See id.* This decision led to Mr. Farrero being reinstated *status quo ante* and allowed him to proceed with the "whistleblower appeal" that he had originally settled. *See id.*

After NASA reinstated Mr. Farrero, both parties started to negotiate another settlement agreement because they were both dissatisfied with each other. *See id.* Among other things, NASA offered to give Mr. Farrero a lump-sum payment if Mr. Farrero would retire from NASA and drop the "whistleblower appeal." *See id.* After

a few months of negotiations, the parties entered into a settlement agreement on October 8, 1998 ("SA98"). *See id.*

The defendant's motion to dismiss turns on the various documents involved in Mr. Farrero's reinstatement and negotiation of SA98. Accordingly, the court will describe the correspondence between both parties. On May 26, 1998, Donald H. Schiller, Assistant Chief Counsel at NASA, wrote a letter to Mr. Farrero regarding his reinstatement. *See* Compl.App. at 12–13. In this letter, Mr. Schiller referred to certain "[r]eports of assaults, threats, or battery upon" NASA employees by Mr. Farrero during 1993 that would support an adverse action against him by NASA. *See id.* This statement referred to an encounter in 1993 when Mr. Farrero allegedly threatened Mr. Schiller in a Florida restaurant. *See* Compl. at 6.

Mr. Farrero repeatedly denied these allegations. *See* Compl.App. at 14; 15–17. For example, in a letter to Mr. Schiller dated May 28, 1998, Mr. Farrero asserted that the "statements concerning [my] misconduct are false" and there "were no threats or battery." *See id.* at 14. A few days later, the parties finalized Mr. Farrero's reinstatement and started to negotiate SA98. On June 3, 1998, Mr. Farrero wrote Mr. Schiller again to review the matters they had discussed during a telephone conference on June 1, 1998. *See id.* at 15–17. In this letter, Mr. Farrero again denied any wrongdoing in 1993 and also denied that Mr. Schiller filed a police report resulting from their encounter in Florida. *See id.* at 16. Finally, Mr. Farrero assured Mr. Schiller that he would have "the matter checked out independently." *See id.*

On June 5, 1998, Michael S. Hill, a representative in NASA's Human Resources department, also wrote Mr. Farrero to recapitulate the June 1st telephone conference. *See id.* at 18–19. Most of the letter concerned Mr. Farrero's reinstatement. *See id.* Mr. Hill, however, also stated that during the conference, Mr. Schiller "informed you [Mr. Farrero] that his attention has been called to certain documents which cause concern regarding your conduct around the time of your resignation." *Id.* at 19.

The negotiations and related correspondence continued. On June 9, 1998, another telephone conference was held to resolve the remaining issues regarding Mr. Farrero's reinstatement. *See* Mot. to Dismiss, Ex. 5. In a letter to Mr. Schiller dated June 18, 1998, Mr. Farrero summarized the June 9th conference and again referred to Mr. Schiller's accusations regarding their Florida encounter. *See id.*

On January 3, 2001, Mr. Farrero, proceeding *pro se,* filed a complaint against NASA.[1] Specifically, Mr. Farrero claimed that NASA maintained a false record on him related to his encounter with Mr. Schiller in a Florida restaurant. *See* Compl. at 5–6. Mr. Farrero insists that he did not learn about these false records until January 8, 1999, when he read correspondence from NASA that referred to records regarding the encounter. *See id.* at 4.

On July 16, 2001, NASA filed a motion to dismiss or, in the alternative, for summary judgment. NASA argues that this court lacks subject-matter jurisdiction because the plaintiff failed to file a timely complaint.[2] Accordingly, NASA moves the

---

1. The plaintiff amended his complaint on March 22, 2001.

2. NASA also argues that this court lacks subject-matter jurisdiction because the plaintiff's claims are barred by *res judicata,* collateral estoppel, and for failure to exhaust adminis-

court to dismiss for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). The court agrees with NASA's argument and· will grant the motion to dismiss.

## III. ANALYSIS

### A. Legal Standard

■ On a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has jurisdiction. *See District of Columbia Retirement Bd. v. United States*, 657 F.Supp. 428, 431 (D.D.C.1987). In evaluating whether subject-matter jurisdiction exists, the court must accept all the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overturned on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Court is not required, however, to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations. *See, e.g., Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).

Moreover, the court need not limit itself to the allegations of the complaint. *See Hohri v. United States*, 782 F.2d 227, 241 (D.C.Cir.1986), *vacated on other grounds by* 482 U.S. 64, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987). Rather, the court may consider such materials outside the pleadings as it deems appropriate to determine whether it has jurisdiction in the case. *See Herbert v. National Academy of Sciences*, 974 F.2d 192, 197 (D.C.Cir.1992).

### B. The Court Lacks Subject–Matter Jurisdiction

■ The defendant argues that this court lacks subject-matter jurisdiction be-

cause the plaintiff failed to file a timely complaint. *See* Mot. to Dismiss at 12. The plaintiff counters by noting that he did not learn of the alleged records until January 8, 1999 and thus, that he did timely file his complaint. *See* Pl.'s Opp'n to Def.'s Mot. ("Pl.'s Opp'n") at 10.

The Privacy Act provides, in pertinent part, that "[a]n action to enforce any liability created under this section may be brought ... within two years from the date on which the cause of action arises...." 5 U.S.C. § 552a(g)(5). The D.C. Circuit has interpreted this provision to mean "that in a normal Privacy Act claim, the cause of action does not arise and the statute of limitation does not begin to run until the plaintiff knows *or should know* of the alleged violation." *Tijerina v. Walters*, 821 F.2d 789, 798 (D.C.Cir.1987) (emphasis added). Finally, "[f]ailure to file within the statute of limitations ... deprives the district court of subject matter jurisdiction." *Griffin v. United States Parole Comm'n*, 192 F.3d 1081, 1082 (D.C.Cir.1999).

In this case, the defendant points to various letters that allegedly acknowledge that the plaintiff had known for more than two years that the agency retained records relating to him regarding the incident in the Florida restaurant. *See* Mot. to Dismiss at 14. The plaintiff responds by noting that he did not find out about these records until January 8, 1999, when he was reviewing agency pleadings involving other matters. *See* Compl. at 9.

At the outset, the court notes that the statute of limitations does not require actual knowledge of the alleged violation. *See Tijerina*, 821 F.2d at 798. The statute of limitations begins to run *either* when the

---

trative remedies. In addition, NASA argues that the plaintiff has failed to state a claim

under Federal Rule of Civil Procedure 12(b)(6).

plaintiff knew or should have known of the alleged violation. *See id.* Accordingly, even if the plaintiff *actually* found out about the violation on January 8, 1999, as he contends, the court still may not have subject-matter jurisdiction if the plaintiff *should have known* about the violation prior to January 3, 1999 (two years before the complaint was filed).

The defendant relies on various correspondence by the plaintiff which demonstrates that he knew of the records about which he now complains. For example, in the June 18th letter, the plaintiff stated that Mr. Schiller referred to "certain alleged misconduct on my part prior to leaving the Agency in '93 that would affect my return to work." *See* Mot. to Dismiss, Ex. 5. Additionally, the defendant also points to the plaintiff's complaint, in which he states that "during the period June–July 1998, [Mr. Schiller], in various letters and verbally, made some comments that I had engaged in threats, stalking, and battery he claimed was in 1993...." Compl. at 5–6. The defendant concludes that as a result of these documents, "[a]t minimum, plaintiff was put on notice at this time that the agency had information regarding allegations of misconduct." Mot. to Dismiss at 16, n. 10.

The defendant's argument is unpersuasive. The inquiry is not whether the plaintiff was put on notice regarding the agency's possession of this "information." Even if the plaintiff knew about the agency's knowledge of the alleged misconduct in 1993, as he apparently did, this is not enough. The plaintiff needed to know, or should have known, about a potential violation by the defendant, such as the alleged record-keeping in violation of the Privacy Act.

In this regard, neither party has adequately addressed the issue. Because the statute of limitations is jurisdictional, *see Griffin,* 192 F.3d at 1082, however, the court is not limited to the party's arguments or pleadings and "may consider such materials outside the pleadings as it deems appropriate" to ensure that it has jurisdiction. *See Herbert,* 974 F.2d at 197.

The key document that sheds light on this inquiry is the letter from Mr. Hill to the plaintiff dated June 5, 1998. In that letter, while discussing back pay and other personnel matters, Mr. Hill stated that "[c]oncerning return to status quo ante, [Mr. Schiller] informed you that his attention has been called to certain *documents* which cause concern regarding your conduct around the time of your resignation." Compl.App. at 18–19 (emphasis added).

This case is analogous to *Bowyer v. United States Dep't of the Air Force,* 875 F.2d 632 (7th Cir.1989). In *Bowyer,* the plaintiff learned of an alleged Privacy Act violation from another worker. *See id.* at 636. When the plaintiff asked if his coworker saw any files related to a confrontation with a superior, the coworker responded "I am sure that there was one in there." *Id.* The court held this statement, by itself, to be sufficient to trigger the statute of limitations because the plaintiff knew, or had reason to know, of the alleged erroneous record. *See id.*

Similarly, in this case, the defendant specifically told the plaintiff in the June 5, 1998 letter that the defendant was keeping certain documents on him regarding the plaintiff's alleged misconduct. *See* Compl. App. at 18–19. In addition, the plaintiff and Mr. Schiller had repeatedly discussed the incident at previous times. Mr. Schiller originally disclosed his concern regarding the alleged misconduct in his letter to the plaintiff on May 26, 1998. *See id.* at 12–13. Moreover, on two occasions after the May 26th letter, the plaintiff vigorously denied Mr. Schiller's allegations. *See id.* at 14, 15–17. The key point here is that whether or not the allegations were true, the plaintiff does not dispute that a

NASA official specifically told him—via the June 5, 1998 letter—that NASA was keeping certain documents on him regarding his alleged misconduct. *See id.* at 18–19.

In light of the foregoing, the court concludes that the plaintiff knew, or should have known, by June 5, 1998, that the defendant kept records on him that he believed to be erroneous. The plaintiff filed his complaint on January 3, 2001. Accordingly, the plaintiff failed to satisfy the Privacy Act's two-year statute of limitations, *see* 5 U.S.C. § 552a(g)(5), and the court must dismiss the complaint for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).[3]

## IV. CONCLUSION

For all these reasons, the court grants the defendant's motion to dismiss. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 5th day of November, 2001.

---

3. Because the court concludes that it lacks subject-matter jurisdiction, the court need not address the defendant's remaining arguments.